FILED
United States Court of Appeals
Tenth Circuit

September 2, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ODALIS PEREZ-JIMINEZ, a/k/a
Perez Odalis,

Defendant - Appellant.

No. 10-1322
(D.C. No. 1:09-CR-00402-DME-1)

---

**ORDER**

---

Before **KELLY, SEYMOUR,** and **HOLMES**, Circuit Judges.

---

The panel has determined, *sua sponte*, that the decision issued in this matter originally on August 19, 2011, should re-issue as a published Opinion. Accordingly, the clerk of court is directed to file the attached published decision *nunc pro tunc* to the original filing date.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

ODALIS PEREZ-JIMINEZ, a/k/a Perez
Odalis,

        Defendant-Appellant.

No. 10-1322

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:09-CR-00402-DME-1)**

---

Submitted on the briefs:[*]

Raymond P. Moore, Federal Public Defender, John T. Carlson, Assistant Federal Public Defender, and David E. Johnson, Research and Writing Specialist, Office of the Federal Public Defender, District of Colorado, Denver, Colorado, for Defendant-Appellant.

John F. Walsh, United States Attorney, and Paul Farley, Assistant United States Attorney, District of Colorado, Denver, Colorado, for Plaintiff-Appellee.

---

[*]     After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Before **KELLY**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

_____

**HOLMES**, Circuit Judge.

_____

Bureau of Prisons officers searched Defendant-Appellant Odalis Perez-Jiminez's person and cell at the Federal Correctional Institution in Florence, Colorado. In his pockets, they found two shanks—homemade, sharpened metal knives—each of which was approximately five-and-a-half inches long and sharpened to a point.

Mr. Perez-Jiminez was indicted on one count of possession of a weapon while an inmate of a federal correctional institution, in violation of 18 U.S.C. § 1791(a)(2) & (b)(3).[1] He pleaded guilty, and the U.S. Probation Office subsequently prepared a Presentence Report ("PSR").[2]

At sentencing, the district court found that Mr. Perez-Jiminez's instant

_____

[1] As relevant to Mr. Perez-Jiminez's appeal, the statute provides that "[w]hoever . . . being an inmate of a prison, makes, possesses, or obtains . . . a prohibited object . . . shall be punished . . . [by] imprisonment for not more than 5 years . . . if the object is . . . a weapon (other than a firearm or destructive device)." 18 U.S.C. § 1791. Although the statute does not contain an express mens rea element, we have held that "a violation of section 1791 must be committed 'knowingly.'" _United States v. Perceval_, 803 F.2d 601, 603 (10th Cir. 1986). Consistent with this requirement, the indictment charged Mr. Perez-Jiminez with "knowingly" possessing the shanks. R., Vol. 1, at 4 (Indictment, filed Sept. 15, 2009).

[2] The Probation Office used the 2009 version of the United States Sentencing Guidelines in preparing the PSR. The parties do not question that choice and, therefore, we exclusively apply that version to the facts of this case.

offense of conviction was a crime of violence pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.2(a), and that he was a career offender under U.S.S.G. § 4B1.1(a). Applying the career-offender provisions, the district court assigned Mr. Perez-Jiminez an offense level of fourteen and a criminal history category of VI. These factors yielded an advisory Guidelines imprisonment range of thirty-seven to forty-six months and a fine range of $4000 to $40,000. The district court sentenced Mr. Perez-Jiminez to thirty-seven months' imprisonment and imposed a fine of $2000.

On appeal, Mr. Perez-Jiminez argues that the district court erred in sentencing him as a career offender because his instant offense of conviction was not a crime of violence, and that the district court abused its discretion in imposing a $2000 fine. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Mr. Perez-Jiminez's sentence.

## DISCUSSION

### I. Crime of Violence and Career-Offender Status

*A. Standard of Review*

This court reviews de novo the district court's determinations that Mr. Perez-Jiminez's instant offense of conviction is a crime of violence, *United States v. Riggans*, 254 F.3d 1200, 1203 (10th Cir. 2001), and that Mr. Perez-Jiminez qualifies as a career offender, *United States v. Patterson*, 561 F.3d 1170, 1172 (10th Cir. 2009). The district court's factual findings are reviewed for clear error.

3

*Patterson*, 561 F.3d at 1172.

   *B. Overview*

   Under the Guidelines,

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

   Mr. Perez-Jiminez and the government agree that he meets the first and third prongs for career-offender status, and it is obvious that Mr. Perez-Jiminez's instant offense of conviction is not a controlled-substance offense. Accordingly, in deciding whether Mr. Perez-Jiminez is a career offender, we need only decide whether his instant offense of conviction—possession of a weapon in prison—is a crime of violence.

   A crime of violence is defined as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

4

U.S.S.G. § 4B1.2(a) (emphasis added).

The parties agree that Mr. "Perez-Jiminez's conviction . . . is punishable by more than one year's imprisonment, does not involve physical force, and is not one of the crimes enumerated in § 4B1.2(a)(2)." Aplee. Br. at 12; *see* Aplt. Opening Br. at 14 ("[T]he only way this offense can be classified as a crime of violence is if it 'otherwise involves conduct that presents a serious potential risk of physical injury to another.'" (quoting U.S.S.G. § 4B1.2(a)(2))). Therefore, in ruling on whether Mr. Perez-Jiminez's instant offense of conviction is a crime of violence—and thus whether he is a career offender—we must determine only whether his offense falls within U.S.S.G. § 4B1.2(a)(2)'s residual clause because the offense "involves conduct that presents a serious potential risk of physical injury to another."

C. *Conduct-Specific Inquiry*

To determine whether a *past* conviction is for a crime of violence, "we employ a categorical approach that looks to the words of the statute and judicial decisions interpreting it, rather than to the conduct of any particular defendant convicted of the crime." *United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir. 2010) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)), *cert. denied*, 79 U.S.L.W. 3710 (2011). "[I]f the statute encompasses both conduct that would qualify as a crime of violence and conduct that would not, we employ a modified categorical approach," under which we "look to the statutory elements, the

5

defendant's charging documents, plea agreement and colloquy (if any), and uncontested facts found by the district judge to determine whether the particular defendant's conduct violated the portion of the statute that is a crime of violence." *Id.* These categorical approaches do "not involve a subjective inquiry into the facts of the case." *United States v. McConnell*, 605 F.3d 822, 825 (10th Cir. 2010), *cert. denied*, 79 U.S.L.W. 3710 (2011).

However, our precedent explicitly permits the use of a conduct-specific inquiry "when considering whether the *instant* offense is a crime of violence." *Riggans*, 254 F.3d at 1204 (emphasis added) (quoting *United States v. Smith*, 10 F.3d 724, 731 n.10 (10th Cir. 1993)) (internal quotation marks omitted). Under the conduct-specific inquiry, the "court correctly consider[s] the facts underlying [the defendant's] conviction" in determining whether it is for a crime of violence.[3] *Id.* Although we have explained that "the practical difficulties of conducting an ad hoc mini-trial[]" require application of the categorical approach

---

[3] The government argues that we should consider the conduct underlying Mr. Perez-Jiminez's *prior* conviction of possessing a weapon in prison, which involved Mr. Perez-Jiminez stabbing another inmate five times with a converted box cutter. Mr. Perez-Jiminez replies that we must not consider the facts of his prior convictions because "a court's factual approach analysis must focus on the conduct of the present instant offense . . . . The defendant's criminal history and prior conduct is not relevant." Aplt. Reply Br. at 10. Because we conclude that Mr. Perez-Jiminez's *instant* offense of conviction is a crime of violence based on the facts of *that* conviction, we affirm his sentence without deciding whether we might also look to the conduct underlying his *prior* convictions.

to *past* convictions, we may apply a conduct-specific inquiry to *instant* offenses because "these concerns do not apply when the court is examining the conduct of the defendant in the instant offense." *Id.* at 1203–04 (alteration in original) (quoting *United States v. Walker*, 930 F.2d 789, 794 (10th Cir. 1991)) (internal quotation marks omitted).  Mr. Perez-Jiminez concedes that we must apply a conduct-specific approach to determine whether his instant offense of conviction is a crime of violence.[4]  *See, e.g.*, Aplt. Reply Br. at 8 ("Mr. Perez-Jiminez agrees

---

[4]       In light of Mr. Perez-Jiminez's concession, we do not inquire whether his conviction for violating 18 U.S.C. § 1791 would qualify as a crime of violence under a categorical approach.  Significantly, this concession also relieves us of the obligation of determining how Supreme Court developments related to the categorical approach would affect a categorical inquiry here.  *See Sykes v. United States*, 131 S. Ct. 2267, 2275–76 (2011); *Begay v. United States*, 553 U.S. 137, 144–45 (2008); *see also Chambers v. United States*, 555 U.S. 122, 127–29 (2009).  *Begay*, and later *Sykes*, applied the categorical approach to determine whether a *prior* offense was a violent felony under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924.  Because the residual clauses of the ACCA and U.S.S.G. § 4B1.2(a) are "worded almost identically," we have looked to cases construing "violent felony" under the ACCA in interpreting "crime of violence" under U.S.S.G. § 4B1.2(a), and have stated that if a conviction under a given statute is held to be a violent felony, that holding "controls the outcome" of a subsequent case asking whether such a conviction is for a crime of violence. *Wise*, 597 F.3d at 1145.

In *Begay*, the Supreme Court held that the ACCA's residual clause extends only "to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples" enumerated, 553 U.S. at 143—that is, crimes which "typically involve purposeful, violent, and aggressive conduct," *id.* at 144–45 (internal quotation marks omitted).  *See Wise*, 597 F.3d at 1144 ("To determine whether the offense categorically falls within the residual clause . . . we must determine whether the offense is 'roughly similar, in kind as well as in degree of risk posed,' to the enumerated crimes . . . .  A crime is 'roughly similar' to an

(continued...)

7

---

4        (...continued)
enumerated crime if it 'typically involve[s] purposeful, violent, and aggressive conduct.'" (alteration in original) (quoting *Begay*, 553 U.S. at 143–45)).

In reliance on *Begay*'s "purposeful, violent, and aggressive" test, we have previously held that the Texas crime of possessing a deadly weapon in prison was a "violent felony" under the ACCA because it was roughly similar, in kind as well as in degree of risk posed, to the ACCA's enumerated offenses. *See United States v. Zuniga*, 553 F.3d 1330, 1334–36 (10th Cir. 2009). Because we are applying a conduct-specific approach here, the government is clearly *not* correct in asserting that "*Zuniga* is dispositive of the issue." Aplee. Br. at 7. Indeed, even if we were applying a categorical approach, the Supreme Court's decision in *Sykes* would at least give us pause in giving controlling effect to *Zuniga*.

In *Sykes*, the Court explained that "levels of risk divide crimes" falling within and beyond the ACCA's residual clause, 131 S. Ct. at 2275, and that the test for inclusion is whether a crime is "similar in risk to the listed crimes," *id.* at 2276. *See United States v. Armijo*, __ F.3d __, 2011 WL 2687274, at *7 n.14 (10th Cir. 2011) ("[T]he [*Sykes*] Court held that the benchmark for evaluating whether any given crime falls within the ACCA's residual clause is potential risk of serious injury to another."). *Sykes* limited *Begay*'s "purposeful, violent, and aggressive" test to strict liability, negligence, and recklessness crimes. *See* 131 S. Ct. at 2275–76 ("As between the two inquiries"—*Begay*'s "purposeful, violent, and aggressive" test, and whether an offense presents a serious potential risk of physical injury to another—"risk levels provide a categorical and manageable standard that suffices to resolve the case before us."); *id.* at 2285 (Scalia, J., dissenting) ("[T]he Court now suggests [that *Begay*'s "purposeful, violent, and aggressive" test] applies only to strict liability, negligence, and recklessness crimes." (citation omitted) (internal quotation marks omitted)); *United States v. Smith*, __ F.3d __, 2011 WL 2714083, at *3 (10th Cir. 2011) ("Where the felony at issue is not a strict liability, negligence, or recklessness crime the test is not whether the crime was purposeful, violent, and aggressive but whether it is similar in risk to the listed crimes." (quoting *Sykes*, 131 S. Ct. at 2276) (internal quotation marks omitted)); *see also United States v. Thomas*, 643 F.3d 802, 806 (10th Cir. 2011) (referring to "the exception set forth in [*Begay*] for 'strict liability, negligence, and recklessness crime[s]' even when they present serious risks of physical injury" (alteration in original) (quoting *Sykes*, 131 S. Ct. at 2276)). As noted, 18 U.S.C. § 1791 requires a "knowing" mens rea. *See*

(continued...)

8

with the government that this Court's current precedent requires it to apply a factual 'conduct-specific' approach in this case.").

Looking to the facts of his instant offense of conviction, we have little difficulty concluding that Mr. Perez-Jiminez's offense presented a serious potential risk of physical injury to another and, therefore, constituted a crime of violence.[5] Mr. Perez-Jiminez, a federal inmate, was found in possession of two shanks, each of which was approximately five-and-a-half inches long and sharpened to a point. It is patent that such shanks are a deadly weapon. Indeed, both the Supreme Court and this court have characterized similar weapons as

---

[4]    (...continued)
*Perceval*, 803 F.2d at 603. Therefore, although we do not decide the question, *Begay*'s "purposeful, violent, and aggressive" test—which we relied upon in *Zuniga*—may no longer apply to offenses like the one at issue here.

[5]    Mr. Perez-Jiminez makes the puzzling assertion that, in conducting the conduct-specific analysis, we are required to apply a "two-part inquiry," set forth in *McConnell*, 605 F.3d at 826, and derived from the Supreme Court's *Begay* decision. *See* Aplt. Reply Br. at 15; *see also Begay*, 553 U.S. at 144–45. However, as discussed above, *see supra* note 4, *Begay* applied a categorical approach to a *prior* offense—not, as here, a conduct-specific approach to an *instant* offense of conviction—and furthermore, in light the Supreme Court's subsequent decision in *Sykes*, 131 S. Ct. at 2275–76, *Begay*'s mode of analysis may not be applicable to an offense like 18 U.S.C. § 1791, which has a "knowing" mens rea. Moreover, the wisdom of Mr. Perez-Jiminez's assertion is called into serious question by his repeated reminders that the categorical and case-specific approaches are different. *See* Aplt. Reply Br. at 17 ("[I]t must be stressed that this Court's precedent under the categorical and modified categorical approach does not control the factual 'conduct specific' inquiry."); *id.* at 18 ("The two inquiries are different."). Therefore, we reject Mr. Perez-Jiminez's assertion that we are obliged to apply the two-part inquiry here in determining whether his instant offense of conviction is a crime of violence.

9

deadly. *See Yates v. Evatt*, 500 U.S. 391, 408 (1991) (characterizing a knife as a deadly weapon), *overruled in part on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991); *United States v. Johnson*, 967 F.2d 1431, 1435 (10th Cir. 1992) (same), *abrogated in part on other grounds by Lewis v. United States*, 523 U.S. 155, 162 (1998); *United States v. Yazzie*, 660 F.2d 422, 430 (10th Cir. 1981) ("[T]he knife in question had a blade at least five inches long. . . . [S]uch a weapon was likely to cause death or serious bodily injury, . . . [and] no reasonable jury could find otherwise. The knife was therefore a deadly weapon as a matter of law . . . ."); *United States v. Davidson*, 597 F.2d 230, 232 (10th Cir. 1979) ("A deadly weapon was used, namely a dining room knife sharpened to a point, with a homemade handle affixed thereto.").

Furthermore, the penal context in which Mr. Perez-Jiminez possessed this deadly weapon is a significant factor in our analysis. "[P]risons are inherently dangerous places and they present unique problems." *United States v. Vahovick*, 160 F.3d 395, 397 (7th Cir. 1998); *accord United States v. Rodriguez-Jaimes*, 481 F.3d 283, 287 (5th Cir. 2007). They "are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 858 (1994) (Thomas, J., concurring in judgment)) (internal quotation marks omitted); *see Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of

10

persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint . . . ."). Thus, it has been said that "acts of violence by inmates against inmates are inevitable," *Taylor v. Freeman*, 34 F.3d 266, 273 (4th Cir. 1994) (quoting *Shrader v. White*, 761 F.2d 975, 980 (4th Cir. 1985)) (internal quotation marks omitted), as "it is virtually impossible to eliminate violence among the incarcerated," *id.* at 273 n.6.

In prison, "contraband weapons . . . facilitate more frequent acts of violence and more severe injuries." *Shrader v. White*, 761 F.2d 975, 991 (4th Cir. 1985) (Sprouse, J., dissenting). Such weapons "may embolden inmates who [otherwise] would be less aggressive," and will "inflict substantially more severe injuries" when they are wielded. *Id.* Put succinctly, possessing a dangerous or deadly weapon in prison "enables violence." *United States v. Boyce*, 633 F.3d 708, 712 (8th Cir. 2011) (quoting *United States v. Vincent*, 575 F.3d 820, 825 (8th Cir. 2009)) (internal quotation marks omitted); *see United States v. Marquez*, 626 F.3d 214, 221 (5th Cir. 2010) ("A prisoner in possession of a deadly weapon within a penal institution is significantly more likely to attack or physically resist an apprehender, such as a guard, or another inmate.").

Outside of prison, "[t]he felon who unlawfully possesses a firearm, although disobeying the law, may have a legitimate use intended for the firearm,

11

such as target shooting or collecting." *United States v. Romero*, 122 F.3d 1334, 1341 (10th Cir. 1997) (quoting *United States v. Young*, 990 F.2d 469, 472 (9th Cir. 1993)); *accord Marquez*, 626 F.3d at 222 ("A felon may be in possession of certain firearms, such as a pistol or hunting rifle, for recreational purposes, even though that possession is unlawful."); *Vahovick*, 160 F.3d at 397–98. But there is no "similarly 'innocent' purpose behind the possession of a deadly weapon by a prison inmate," *Young*, 990 F.2d at 472, as "[t]he confines of prison preclude any recreational uses for a deadly weapon," *Romero*, 122 F.3d at 1341 (quoting *Young*, 990 F.2d at 472).

"[T]here is no legitimate purpose for a prisoner to carry a weapon 'designed to kill, injure or disable' another. On the contrary, the only reason to carry such a weapon is to use it to attack another or to deter an attack." *Romero*, 122 F.3d at 1343; *accord Marquez*, 626 F.3d at 222–23 ("[T]here is no purpose for possession of a deadly weapon in prison other than to have the means to initiate violence or respond to violence with violence."). And an inmate's possession of a weapon in prison indicates his willingness to use it. *See Boyce*, 633 F.3d at 712 ("When a prisoner carries a dangerous weapon, that behavior indicates that he is 'prepared to use violence if necessary' and is ready 'to enter into conflict . . . .'" (quoting *Zuniga*, 553 F.3d at 1335–36)); *Marquez*, 626 F.3d at 222 ("[A]t a minimum his intentional possession of a deadly weapon signals his willingness to use it if, in his mind, the occasion warrants it."); *Zuniga*, 553 F.3d

12

at 1335 ("Mr. Zuniga's possession of a deadly weapon in prison likely indicated that he was prepared to use violence if necessary." (internal quotation marks omitted)).

Accordingly, we hold that Mr. Perez-Jiminez's possession in prison of a deadly weapon—two sharpened, five-and-a-half-inch-long shanks—presented a serious potential risk of physical injury to another.[6] Mr. Perez-Jiminez's instant offense of conviction was therefore a crime of violence, and the district court properly sentenced him as a career offender.

## II. Reasonableness of the Fine

As noted above, the Guidelines called for a fine of between $4000 and $40,000, but the district court imposed a fine of only $2000 as part of Mr. Perez-Jiminez's sentence. Mr. Perez-Jiminez challenges the district court's decision to impose any fine, as well as the amount of the fine imposed.

---

[6] We note that we held in *Romero*, 122 F.3d 1334, and reaffirmed in *Zuniga*, 553 F.3d 1330, that "possession of a deadly weapon in prison 'presents a serious potential risk of physical injury to another.'" *Zuniga*, 553 F.3d at 1333–34 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Both *Romero* and *Zuniga* employed a categorical approach. Indeed, Mr. Perez-Jiminez concedes that, under the categorical approach, his instant offense of conviction presents a serious potential risk of physical injury to another. *See* Aplt. Opening Br. at 15 ("He realizes that the first inquiry is squarely settled by this Court's precedent."). But Mr. Perez-Jiminez insists that the offense does not satisfy the additional inquiry involving *Begay*'s "purposeful, violent, and aggressive" test. *See* Aplt. Opening Br. at 23; *see also Begay*, 553 U.S. at 144–45. However, we have not used a categorical approach here. Therefore, *Romero* and *Zuniga* are not controlling.

*A. Standard of Review*

The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), rendered the Guidelines advisory. *Gall v. United States*, 552 U.S. 38, 46 (2007). Accordingly, the district court is not required to impose a fine despite the Guidelines' command that it "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a); *see United States v. Rattoballi*, 452 F.3d 127, 139 (2d Cir. 2006) ("Because *Booker* rendered the whole of the Guidelines advisory, it stands to reason that the Guidelines' fine requirements were likewise rendered advisory. . . . Accordingly, a district court is not under an obligation to impose a fine post-*Booker* . . . ."), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85, 108 (2007); *United States v. Huber*, 404 F.3d 1047, 1063 (8th Cir. 2005) ("The government argues that section 5E1.2(a) requires the district court to fine a defendant unless the defendant establishes that he is unable to pay. The guidelines, though, are now advisory. So the government's argument misses the mark." (citation omitted)).[7]

"Post-*Booker*, we review sentences for reasonableness under an abuse of discretion standard." *United States v. Sutton*, 520 F.3d 1259, 1262 (10th Cir.

<hr>

[7] A panel of this court reached a similar conclusion in a non-precedential decision. *See United States v. Torres*, 188 F. App'x 791, 793–94 (10th Cir. 2006) (holding that the district court committed non-constitutional *Booker* error by treating the Guidelines' fine provisions as mandatory).

2008) (citing *Gall*, 552 U.S. at 46). "Reasonableness includes a procedural component, which includes how the sentence was calculated, and [a] substantive component concerning the length of the sentence actually imposed."[8] *Id.* At bottom, we seek to determine whether the district court abused its discretion in imposing the fine. *See United States v. Vigil*, 644 F.3d 1114, 1123 (10th Cir. 2011).[9] The defendant bears the burden of proving both his present and future inability to pay the fine. *See* U.S.S.G. § 5E1.2(e) ("If the defendant establishes that . . . he is not able and . . . is not likely to become able to pay all or part of the fine . . . the court may impose a lesser fine or waive the fine."); *Vigil*, 644 F.3d at 1123 ("[D]efendant bears the burden of demonstrating an inability to pay a fine." (quoting *United States v. Deters*, 184 F.3d 1253, 1258 (10th Cir. 1999)) (internal quotation marks omitted)). We will "reject a district court's findings regarding a

---

[8]     As discussed *infra*, "sentence" is broadly defined to include not just imprisonment, but also probation and fines—thus, a fine, like a term of imprisonment, is merely one type of sentence available to the district court. We have routinely distinguished between the procedural and substantive reasonableness of sentences of imprisonment, but apparently have not so distinguished the reasonableness of sentences of fines.

The parties have not framed their arguments in terms of procedural and substantive reasonableness. Nevertheless, we believe it to be analytically useful—if not required—to evaluate Mr. Perez-Jiminez's arguments through the lens of both procedural and substantive reasonableness, as he challenges both the process by which the district court imposed his fine and the amount of the fine imposed—i.e., the fine's procedural *and* substantive reasonableness.

[9]     We note that we reviewed the district court's decision to impose a fine for abuse of discretion even prior to *Booker*. *See, e.g.*, *United States v. Trujillo*, 136 F.3d 1388, 1398 (10th Cir. 1998).

15

defendant's ability to pay a fine only if they are clearly erroneous." *Trujillo*, 136 F.3d at 1398.

> *B. Procedural Reasonableness: Burden on Defendant and Dependents*

Mr. Perez-Jiminez argues that the district court was required to consider the burden his fine would place on his dependents, but failed to "focus[] on the burden Mr. Perez-Jiminez's daughter may experience" because of his fine. Aplt. Opening Br. at 25–26. This argument sounds in procedural error because it alleges that the district court did not consider a factor that it was required to take into account in sentencing Mr. Perez-Jiminez to a fine. *See United States v. Elfgeeh*, 515 F.3d 100, 136 (2d Cir. 2008) ("In calculating a defendant's fine, the sentencing court must follow a procedure similar to the post-*Booker* procedure that it is to follow in calculating a defendant's term of imprisonment: It must consider the Guidelines recommendation for the imposition of a fine, consider the § 3553(a) factors, and consider the fine-specific factors listed in 18 U.S.C. §§ 3571 and 3572."); *cf. Gall*, 552 U.S. at 51 (recognizing that "failing to consider the § 3553(a) factors" is a procedural error).

In addition to the 18 U.S.C. § 3553(a) sentencing factors, the district court must consider the additional factors set forth in 18 U.S.C. § 3572(a) in determining whether to impose a fine at all, and must also consider both the § 3572(a) factors and the similar factors set forth in U.S.S.G. § 5E1.2(d) in setting the amount of any fine. *See* 18 U.S.C. § 3572(a); U.S.S.G. § 5E1.2(d); *see*

*also Vigil*, 644 F.3d at 1123 ("[Section] 3572(a) sets forth factors that must be considered by a district court in determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine. Section 5E1.2(d) of the Guidelines sets forth similar factors to be considered in determining the amount of a fine." (alteration omitted) (internal quotation marks omitted)). Both § 3572(a) and § 5E1.2(d) require the district court to consider the burden that a fine would impose on the defendant *and* his dependents. *See* 18 U.S.C. § 3572(a)(2) (requiring the district court to consider "the burden that the fine will impose upon defendant, [or] any person who is financially dependent on the defendant"); U.S.S.G. § 5E1.2(d)(3) (requiring the district court to consider "the burden that the fine places on the defendant and his dependents"). Although the "district court is not required to make factual findings specific to each factor set forth in 18 U.S.C. § 3572(a) or U.S.S.G. § 5E1.2," we have indicated that "the record must reflect the court's consideration of the pertinent factors and the basis for the imposition of a fine." *Vigil*, 644 F.3d at 1124.

Mr. Perez-Jiminez cannot prevail on his procedural challenge—that is, his contention that the district court erred in failing to consider the burden that the fine would impose on his daughter. According to the PSR, Mr. Perez-Jiminez had no financial dependents and his daughter was eighteen years old. Mr. Perez-Jiminez did not object to these findings. Consequently, the district court would have been under no statutory or regulatory obligation to consider the burden of

17

any fine on his daughter on the ground that she was a "dependent."  18 U.S.C. § 3572(a)(2); U.S.S.G. § 5E1.2(d)(3).

In any event, the district court clearly did consider the impact of the fine on Mr. Perez-Jiminez's daughter.  Mr. Perez-Jiminez's counsel offered a passionate argument against the imposition of a fine, noting that taking such an action would be "exceptionally counterproductive" and that Mr. Perez-Jiminez's prison savings "should go to a place where it's going to have a productive impact upon a human being whose dad hasn't been able to give her much else."  R., Vol. 2, at 44. (Sentencing Hr'g Tr., dated July 13, 2010).  The district court noted that its initial "inclination was to issue a fine of $4,000," but, "[i]n light of the statements that [Mr. Perez-Jiminez's counsel] ha[d] made," the court "back[ed] that [fine amount] down to 2,000."  *Id.* at 55–56.  The district court was not required to set forth more specific factual findings to support the fine it imposed.  *See Trujillo*, 136 F.3d at 1398 ("To the extent Mr. Trujillo is suggesting the court must set forth factual findings specific to each statutory factor prior to imposing a fine, we disagree.  This court imposes no such requirement.  It is sufficient that the record reflects the basis for the imposition of the fine." (citations omitted)); *accord Vigil*, 644 F.3d at 1124.  Accordingly, the district court did not commit procedural error.

C. *Substantive Reasonableness: Amount of Fine*

Mr. Perez-Jiminez argues that his $2000 fine was "unnecessary" and

18

"excessive" because "the parties both argued that no fine should be imposed, and the probation office recommended only a $1,000 fine." Aplt. Opening Br. at 25. Mr. Perez-Jiminez further contends that "the monies the district court found significant were in fact the meager savings of Mr. Perez-Jiminez's prison earnings, saved over an extended period of time," which he planned to put toward his daughter's education. *Id.* These arguments sound in substantive error because they concern the amount of the fine that the district court imposed. *See Sutton*, 520 F.3d at 1262 ("Reasonableness includes a . . . substantive component concerning the length of the sentence actually imposed.").

"We apply a rebuttable presumption of reasonableness for sentences imposed within the correctly calculated advisory guideline range." *United States v. Galloway*, 509 F.3d 1246, 1251 (10th Cir. 2007). "Sentence" is broadly defined to include not just terms of imprisonment, but also terms of probation and fines. *See* 18 U.S.C. § 3551(b) ("An individual found guilty of an offense shall be sentenced . . . to . . . (1) a term of probation . . . ; (2) a fine . . . ; or (3) a term of imprisonment . . . ."); *United States v. Story*, 635 F.3d 1241, 1246 (10th Cir. 2011) ("The court [in *United States v. Manzella*, 475 F.3d 152 (3d Cir. 2007),] found the Sentencing Reform Act uses the term 'sentence' broadly to refer to many types of punishment, including imprisonment. . . . [Section] 3551 . . . provides that a convicted defendant may be sentenced to a fine, a term of probation, or a term of imprisonment . . . ."); *United States v. McMillan*, 106 F.3d

19

322, 324 (10th Cir. 1997) ("The Sentencing Guidelines clearly include fines as a type of criminal sentence."); *see also United States v. Doe*, 617 F.3d 766, 771 (3d Cir. 2010) ("'[I]mprisonment' is merely one form of sentencing, whereas a 'sentence' might include other things such as fines, restitution, or supervised release."), *cert. denied*, 79 U.S.L.W. 3696 (2011); *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) ("[I]mposition of a *sentence*[ is] a broader concept that encompasses imprisonment as well as probation and fines."); *Manzella*, 475 F.3d at 158 ("The terms 'sentence' and 'imprisonment' in the Sentencing Reform Act are different . . . . 'Sentence' has [a] broad meaning.  It includes many types of possible punishment, only one of which is 'imprisonment.'"); *United States v. Sotelo*, 94 F.3d 1037, 1040 (7th Cir. 1996) ("The authorized types of sentences . . . include the staples of punishment—a term of imprisonment, probation, and fines.").  Accordingly, because we presume that sentences within the Guidelines are reasonable, and a fine is merely one type of sentence available to the district court, we will presume that a fine imposed within the Guidelines range is reasonable.  *Cf. United States v. McBride*, 633 F.3d 1229, 1232–33 (10th Cir. 2011) (holding that the "presumption of reasonableness . . . [applicable to] within-guidelines sentences imposed upon conviction . . . is also appropriate in reviewing a revocation-of-supervised-release sentence within the range suggested by the Commission's policy statements").

Moreover, because a Guidelines sentence is presumptively reasonable, it

20

follows that "a below-guideline sentence is also presumptively reasonable against an attack by a defendant claiming that the sentence is too high." *United States v. Balbin-Mesa*, 643 F.3d 783, 788 (10th Cir. 2011) (quoting *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008)) (internal quotation marks omitted). Thus, a below-Guidelines fine will be presumed reasonable on appeal against a defendant's challenge to the fine amount.

Here, the Guidelines recommended that Mr. Perez-Jiminez pay a fine in the range of $4000 to $40,000. The district court imposed a fine on Mr. Perez-Jiminez of $2000, well below the bottom of his Guidelines range for fines. Thus, Mr. Perez-Jiminez's sentence (i.e., fine) receives a rebuttable presumption of reasonableness on appeal against his challenge that it is unreasonably harsh.

Mr. Perez-Jiminez fails to overcome that presumption. Mr. Perez-Jiminez's argument that his $2000 fine was "unnecessary" and "excessive" because "the parties both argued that no fine should be imposed, and the probation office recommended only a $1,000 fine," Aplt. Opening Br. at 25, reflects, at most, a difference of opinion between the parties and the district court about what an appropriate fine should be. It does not demonstrate that the district court abused its discretion in imposing a $2000 fine.

Nor has Mr. Perez-Jiminez carried his burden to show that he lacks the ability to pay the fine imposed. The PSR reflects, and the district court noted, that Mr. Perez-Jiminez had $5000 in his prison account. Moreover, the

21

uncontested facts in the PSR show that Mr. Perez-Jiminez worked both before and while being incarcerated, and that he anticipates working again after his release. Further, the PSR indicates that Mr. Perez-Jiminez has no liabilities. *See United States v. Klein*, 93 F.3d 698, 706 (10th Cir. 1996) ("Mr. Klein has failed to submit any evidence establishing his inability to find future employment or any evidence indicating current or future financial liabilities which would prevent him from using his future earnings to pay the fine. . . . [His] reliance on his current insolvency is not enough . . . .").

The district court's decision to impose a $2000 fine is also supported by its consideration of "the expected costs to the government of any imprisonment." 18 U.S.C. § 3572(a)(6); *see* U.S.S.G. § 5E1.2(d)(7) (requiring the district court to consider "the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed"). The district court explicitly noted that "confining this defendant will cost over $2,000 every month," R., Vol. 2, at 55, and the PSR indicates that Mr. Perez-Jiminez's monthly cost of imprisonment is $2,157.88, R., Vol. 3, at 27.

Mr. Perez-Jiminez's fine is entitled to a presumption of reasonableness on appeal, which Mr. Perez-Jiminez has failed to rebut. Accordingly, the district court did not substantively err by sentencing Mr. Perez-Jiminez to a $2000 fine.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** Mr. Perez-Jiminez's sentence.

22