FILED
United States Court of Appeals
Tenth Circuit

August 21, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BROOKS L. KELLOGG,

Defendant - Appellant.

No. 11-1429

(D. Colorado)

(D.C. No. 1:10-CR-00563-CMA-1)

---

ORDER AND JUDGMENT[*]

---

Before **MURPHY**, **EBEL**, and **HARTZ**, Circuit Judges.

---

Defendant Brooks L. Kellogg pleaded guilty in the United States District

Court for the District of Colorado to traveling in interstate commerce with the

intent that murder for hire be committed. *See* 18 U.S.C. § 1958(a). The court

imposed a sentence of 72 months' imprisonment, two years of supervised release,

and a $100,000 fine. Defendant appeals his fine, arguing that it was both

procedurally and substantively unreasonable. Exercising jurisdiction under

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

28 U.S.C. § 1291, we affirm Defendant's fine because the district court adequately explained why it imposed the fine and the amount of the fine was reasonable.

## I.    BACKGROUND

In 2006 Defendant and others settled a lawsuit brought against them by First Land Development, LLC (First Land).  In 2010, however, First Land alleged a breach of the agreement, and a Colorado state court entered a judgment against Defendant and others.  Later that year, Defendant confided in a friend that he wished to harm Stephen Bunyard, a principal of First Land.  The conversation started a chain of events that eventually led Defendant to travel to Denver to pay a third party (an undercover FBI agent) to kill Mr. Bunyard.

A federal grand jury indicted Defendant on five counts for offenses relating to the proposed murder for hire.  He reached an agreement with the government under which he pleaded guilty to one count on April 28, 2011.  The presentence report (PSR) calculated a total offense level of 29 and a criminal history category of I.  This resulted in an advisory guideline sentence of 87 to 108 months' imprisonment, *see* USSG ch. 5, pt. A, and a fine of $15,000 to $150,000, *see id.* § 5E1.2(c)(3).  To determine Defendant's ability to pay, a probation officer gave Defendant a financial packet.  The packet apparently contained a Declaration of Accuracy of Financial Statement (Declaration) to be signed by Defendant, but the officer understood that the information would be completed by Defendant's

accountant. Although the record on appeal does not contain a completed financial packet, the PSR states that Defendant submitted a summary of his assets and liabilities completed by his wife. The summary asserted that Defendant had no savings and a negative net worth of more than $38 million dollars. Defendant did not submit the Declaration; his counsel sent an email explaining that Defendant was "not able to participate in this endeavor in any meaningful way." R., Vol. 4 pt. 1 at 24 (internal quotation marks omitted). The officer sent another Declaration, but Defendant did not return it.

The probation officer conducted an investigation, which raised questions about the submitted financial summary: The Chadwick Real Estate website listed him as a managing member; an online reference site stated that he owned Fox Pavilion LLC in Hays, Kansas. His resume stated that he was active with Beth Corporation in Libertyville, Illinois. In 2008 he had given a deferred gift of more than $10 million to the University of Illinois Foundation. And in the same year he had donated $500,000 to an educational foundation associated with a fraternity at Fort Hays State University in Kansas; a character reference sent to the district court by a dean at the university said that Defendant and his wife fund a scholarship. Finally, Defendant's credit report estimated that he was making monthly debt payments of $20,513.

Defendant filed written objections, arguing that his financial summary sufficiently demonstrated his inability to pay a fine. In particular, he insisted that

his finances were complex and that it would be "imprudent to sign a sworn statement on the accuracy of financial information which the Defendant is not in a position to compile . . . ." *Id.* at 230. He also asserted that the $500,000 gift was a pledge that had not yet been paid.

After learning of Defendant's repeated failure to submit the Declaration, the district court sua sponte issued an order on June 29, 2011, continuing the sentencing hearing and requiring Defendant to provide a certified financial statement. Defendant then complied by signing the Declaration on July 1. Also, his counsel responded to inquiries from the probation officer about Defendant's monthly income and employment status, asserting that Defendant had no monthly income because none of his businesses operated at a profit; that Defendant's wife's income comes from Social Security and property owned by her; and that Defendant had no active role in Chadwick Real Estate.

At the sentencing hearing on September 1, 2011, the district court expressed its concern about Defendant's "lack of cooperation" in providing necessary information to the probation officer and indicated that the information he did offer "seem[ed] to be overly exaggerated and somewhat lacking in candor." *Id.*, Vol. 3 at 15. The court noted that defense counsel had told the probation officer that Defendant could not participate in the gathering of financial information prepared by his wife even though she apparently visited him weekly; that Defendant signed the Declaration after previously refusing to do so; and that

-4-

he never attempted to hire an accountant to complete and certify his submissions to the court. The court stated:

> The additional information that was submitted only raises more questions regarding whether the defendant has fully and accurately disclosed all of his holdings and his income. The probation officer inquired as to an accounting of monthly income that was due to the defendant as a result of many businesses and properties in which he has an interest. In response to the probation officer to those inquiries regarding income, the businesses owned by defendant include, as far as I could tell, a restaurant, a wedding complex, bars, leased parking spaces, multi-tenant office buildings. And the defendant's response is that none—none of these assets generate any profit whatsoever.
> Given the rather lavish lifestyle that the defendant lived previously before his arrest in this case, such an unsupported statement simply does not appear credible to me. I find it hard to believe that someone who lives in a personal residence valued at more than $2.66 million, and who 3 years ago could commit himself to a $10,000,00[0] contribution to a higher ed. institution, now has absolutely no assets of any value.
> . . . .
> In addition, the financial information that was provided does not appear to be complete based on the probation officer's search of public records. The defendant was still listed as an active participant in the Chadwick Real Estate Group. He was still listed as the owner of the Fox Pavilion in Hays, Kansas. He was affiliated in some way to the Old Pilot Building. In 2008, he made a $500,000 donation to a fraternity at Fort Hays University, and announced that he and his wife had given a deferred gift in excess of $10,000,00[0] to the University of Illinois.
> These properties, while some were mentioned, they were really not accounted for in the financial information submitted by the defendant's wife. For these reasons, the Court finds that the defendant failed to meet his burden of proving that he is unable to pay a fine.

*Id.* at 16–18. Turning to the offense itself, the court then stated:

> With respect to the [18 U.S.C. §] 3553(a) factors, the Court finds that the defendant's conduct in this case was extremely egregious. The

defendant essentially contracted with an undercover agent to kill the victim in this case. And the reason he wanted the victim to be killed was because of a dispute over money.

*Id.* at 19.

Defense counsel objected, stating that his client's finances were in disarray because he had many properties in foreclosure; that Defendant could provide further documentation to prove that he is in debt (although counsel stated later that he did not seek a continuance); and that given Defendant's age and the improbability of future employment, he would not be able to pay a fine. After hearing from the government and the intended victim, the court pronounced sentence:

> Now, for the reasons previously stated by this Court, the Court will impose a fine. And I note from the financial statement that was submitted by [Defendant], he has a 50 percent interest in his personal residence, which is valued at $1,334,845. Claims to only have about $1,400 in other personal property. I don't know what happened to all of the furniture and everything else that would be in that $2.6 million home, and he does have a lot of liabilities, but he also has a lot of equity in other properties that are listed on the second page here.
> As a result, for the reasons that I previously stated, I am going to impose a fine in the amount — I was going to impose at the top of the range of $150,000. Based on [Defense counsel's] arguments, I will reduce that by what I consider to be a significant amount. I am going to impose a fine of $100,000.

*Id.* at 44. The court also granted Defendant's request for a sentence variance and imposed 72 months' imprisonment and two years' supervised release.

Shortly after filing a notice of appeal on September 14, 2011, Defendant filed two district-court motions in which he asserted that he could not afford an

attorney. One asked the court to appoint counsel to represent him on appeal. The other asked that he be provided a sentencing-hearing transcript at the government's expense. In an order dated November 22, the court found that Defendant was financially unable to obtain counsel, but denied the motion to appoint counsel. On December 21 the court granted the motion for a free transcript.

On appeal Defendant asserts that imposition of a fine was procedurally unreasonable because (1) the district court failed to provide an adequate explanation or make adequate findings to support the fine, (2) it made contradictory findings regarding his financial condition, and (3) it relied on erroneous "facts" in finding that he failed to meet his burden to show inability to pay. He also asserts that the fine was substantively unreasonable because (1) his liabilities and lack of future ability to pay rendered a fine improper, and the court did not give meaningful weight to his financial condition and the burden of a fine, as required by 18 U.S.C. § 3572(a); and (2) the court impermissibly considered his prior socioeconomic status.

## II.    DISCUSSION

### A.    Procedural Reasonableness

When a party challenges a sentence for procedural reasonableness, our standard of review is abuse of discretion, under which we review the district court's legal conclusions de novo and its factual findings for clear error. *See*

*United States v. Mollner*, 643 F.3d 713, 714 (10th Cir. 2011); *United States v. Vigil*, 644 F.3d 1114, 1123 (10th Cir. 2011) (applying abuse-of-discretion standard to imposition of fine).

The Guidelines provide that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."  USSG § 5E1.2(a).

> If the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine . . . , or (2) imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine.

*Id.* § 5E1.2(e).  "As the plain language of Section 5E1.2 indicates, the defendant bears the burden of demonstrating an inability to pay a fine."  *Vigil*, 644 F.3d at 1123 (brackets and internal quotation marks omitted).

In deciding whether to impose a fine and the amount of the fine, a district court must consider not only the familiar § 3553(a) factors, but also those in 18 U.S.C. § 3572(a), which require the court to consider, among other things, "the defendant's income, earning capacity, and financial resources[.]"[1] *Id.*  Similarly,

---

[1] 18 U.S.C. § 3572(a) states:

Factors to be considered.—In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider, in addition to the factors set forth in section 3553(a)—
(1) the defendant's income, earning capacity, and financial resources;
(2) the burden that the fine will impose upon the defendant, any
(continued...)

-8-

USSG § 5E1.2(d) provides that in determining the amount of the fine, the court

must consider, among other factors,[2] "any evidence presented as to the

[1](...continued)
person who is financially dependent on the defendant, or any other
person (including a government) that would be responsible for the
welfare of any person financially dependent on the defendant,
relative to the burden that alternative punishments would impose;
(3) any pecuniary loss inflicted upon others as a result of the offense;
(4) whether restitution is ordered or made and the amount of such
restitution;
(5) the need to deprive the defendant of illegally obtained gains from
the offense;
(6) the expected costs to the government of any imprisonment,
supervised release, or probation component of the sentence;
(7) whether the defendant can pass on to consumers or other persons
the expense of the fine; and
(8) if the defendant is an organization, the size of the organization
and any measure taken by the organization to discipline any officer,
director, employee, or agent of the organization responsible for the
offense and to prevent a recurrence of such an offense.

[2] USSG § 5E1.2(d) states:

In determining the amount of the fine, the court shall consider:
(1) the need for the combined sentence to reflect the seriousness of
the offense (including the harm or loss to the victim and the gain to
the defendant), to promote respect for the law, to provide just
punishment and to afford adequate deterrence;
(2) any evidence presented as to the defendant's ability to pay the
fine (including the ability to pay over a period of time) in light of his
earning capacity and financial resources;
(3) the burden that the fine places on the defendant and his
dependents relative to alternative punishments;
(4) any restitution or reparation that the defendant has made or is
obligated to make;
(5) any collateral consequences of conviction, including civil
obligations arising from the defendant's conduct;
(6) whether the defendant previously has been fined for a similar

(continued...)

defendant's ability to pay the fine . . . ." *Id.* § 5E1.2(d)(2).

We now turn to Defendant's particular claims of procedural unreasonableness.

### 1.    Adequacy of Findings

Defendant contends that the district court failed to make adequate findings regarding his ability to pay a fine in light of his contrary evidence and argument. He asserts that *Vigil* requires specific findings in that context. *See* 644 F.3d at 1124. And, although acknowledging that *United States v. Foote* states that "[d]istrict courts are not required to make specific findings in cases where uncontested evidence establishes the defendant's ability to pay[,]" 413 F.3d 1240, 1253 (10th Cir. 2005), he says that the opinion required specific findings on the defendant's ability to pay in that case because there, as here, the defendant "disputed his ability to pay and presented evidence in support of his position." *Id.*

We are not persuaded. In this case the district court discussed at length Defendant's ability to pay and considered his evidence and arguments at the sentencing hearing. The court then explained why he failed to carry his burden of

[2](...continued)
offense;
(7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and
(8) any other pertinent equitable considerations.
The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive.

proving his inability to pay.  Our case law does not require more than what the court said.

### 2.    Conflicting Factual Findings

Defendant further argues that the district court's finding that he failed to demonstrate inability to pay was clearly erroneous in light of its later finding that he was unable to afford counsel on appeal.  We admit to being perplexed about why, less than three months after sentencing, the district court changed its mind about Defendant's financial condition.  But even if a court changes its mind about the persuasiveness of the same evidence, it cannot revise the sentence sua sponte three months later, *see* Fed. R. Crim. P. 35; and we must affirm a prior reasonable decision.  A decision is not procedurally unreasonable just because another judge (or even the same judge) could later reach a contrary, albeit reasonable, decision.

### 3.    Whether Defendant Met His Burden To Show Inability To Pay

Defendant contends that the district court, in finding that he failed to meet his burden to show inability to pay, relied on erroneous information.  First, the district court based its determination partly on his lack of cooperation and candor, but Defendant maintains that the record shows that he dutifully submitted documents that the probation officer and the court had requested.  Second, the court indicated that the financial summary submitted by Defendant's wife seemed incomplete, but Defendant argues (1) that the summary was complete; (2) that the

$500,000 donation to the educational foundation at Fort Hays State University was not included because it was an unpaid pledge; and (3) that in any event, the court should rely primarily on submissions by Defendant rather than that of his wife. Third, the court relied on the fact that Defendant still had a 50% interest in his house, some personal property, and "a lot of equity[,]" R., Vol. 3 at 44, but Defendant argues that it failed to consider adequately his liabilities and lack of cash flow.

These arguments are unavailing. The validity of the evidence he proffers depends on his credibility, which the district court doubted. It had ample reason to do so, given Defendant's evasiveness and the absence of any detail in his accounting of his assets. In light of the record, we hold that the district court did not clearly err in finding that Defendant did not meet his burden to prove his inability to pay a fine.

### B.    Substantive Reasonableness

Defendant contends that the fine was unreasonably harsh. We review sentences—including fines—for substantive reasonableness under an abuse-of-discretion standard, giving "substantial deference to district courts." *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008) (internal quotation marks omitted); *see also United States v. Perez-Jiminez*, 654 F.3d 1136, 1146 (10th Cir. 2011) (reviewing fine under same substantive-reasonableness standard). "A district court abuses its discretion when it renders a judgment that is arbitrary,

capricious, whimsical, or manifestly unreasonable." *Sells*, 541 F.3d at 1237 (internal quotation marks omitted). A within-guideline fine is entitled to a presumption of reasonableness, which Defendant may rebut by demonstrating that it is unreasonable when viewed against the statutory factors that the court must consider in imposing the fine. *See id.*; *Perez-Jiminez*, 654 F.3d at 1146–47. Defendant's arguments fail to rebut the presumption of reasonableness.

First, Defendant contends that his negative net worth, liabilities, and lack of any future ability to pay preclude imposition of the fine and that "the district court did not give any meaningful weight to the admitted burden a fine would impose on defendant relative to other alternatives, or the dire state of his income, earning capacity, and financial resources . . . ." Aplt. Br. at 28. But this argument is merely a rehash of his complaint that the court did not adopt his argument that he could not afford a fine. It amounts to a challenge to the court's fact finding and is essentially a procedural-reasonableness argument, one we have already rejected.

Second, Defendant contends that the district court impermissibly considered Defendant's prior socioeconomic status by giving too much weight to his "lavish lifestyle" and charitable contributions, R., Vol. 3 at 17. He relies on USSG § 5H1.10, which states that "Socio-Economic Status" is "not relevant in the determination of a sentence." But the Guidelines are not binding in assessing substantive reasonableness; a court can impose a sentence that varies from the

Guidelines without being substantively unreasonable. *See United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1216 (10th Cir. 2008) (Even if a district court varies from the guideline range, "we simply consider whether the length of the sentence is substantively reasonable utilizing the abuse-of-discretion standard. We do not apply a presumption of unreasonableness to the sentence, and instead must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." (citation and internal quotation marks omitted)). More importantly, the district court did not indicate that its sentencing decision was based on Defendant's class or social position. The court's comment about a "lavish lifestyle," R., Vol. 3 at 17, was made only when expressing skepticism that Defendant could be impecunious so soon after having huge amounts of money to spend. The court's concern was Defendant's ability to pay; it did not set Defendant's punishment based on his status. We need not decide whether Defendant's lavish-lifestyle argument relates to procedural, rather than substantive, reasonableness.

## III.   CONCLUSION

We AFFIRM Defendant's fine.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge