**UNITED STATES of America**

v.

**Terrell POLK, Appellant.**

No. 08–4399.

United States Court of Appeals, Third Circuit.

Argued July 8, 2009.

Opinion Filed: Aug. 12, 2009.

Stephen F. Becker, Esquire (Argued) Shapiro & Becker, Lewisburg, PA, for Appellant.

Martin C. Carlson, United States Attorney, George J. Rocktashel (Argued), Assistant United States Attorney, Office of the United States Attorney, Williamsport, PA, for Appellee.

Before: SLOVITER, AMBRO, and JORDAN, Circuit Judges.

## OPINION OF THE COURT

AMBRO, Circuit Judge.

Terrell Polk appeals from an order sentencing him to 37 months' imprisonment for possession of a "shank" in prison. The District Court characterized Polk's offense as a "crime of violence," and accordingly calculated his sentencing range pursuant to the Career Offender Guidelines. This was correct under *United States v. Kenney*, 310 F.3d 135 (3d Cir.2002). However, because we determine that *Kenney* is no longer good law in light of the Supreme Court's recent decision in *Begay v. United States*, —— U.S. ——, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), we vacate the District Court's sentencing order and remand for further proceedings.

## I.  Background

In June 2007, Polk, an inmate serving a sentence at the United States Penitentiary at Lewisburg, PA, had his cell searched by a correctional officer, who found a six-inch plastic homemade shank in an envelope containing his personal papers. A grand jury in the Middle District of Pennsylvania returned a one-count indictment against Polk for possession of a prohibited object designed to be used as a weapon in violation of 18 U.S.C. § 1791(a)(2), and Polk pleaded guilty to the indictment in accordance with a plea agreement. At Polk's sentencing hearing in December 2008, the District Court determined that the offense qualified as Polk's third predicate "crime of violence," thus warranting a three-level sentence enhancement under the federal Sentencing Guidelines for career offend-

ers. U.S.S.G. § 4B1.1. Consequently, Polk's total offense level was 14, which, when combined with his criminal history category of VI, resulted in a Sentencing Guidelines range of 37–46 months. Without the enhancement, the Guidelines range would have been 27–33 months. Polk did not object to his designation as a career offender (though *Begay* had been issued six months before sentencing), and, as noted, was sentenced to 37 months' imprisonment. He timely appealed.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a)(1) and 28 U.S.C. § 1291.

Because Polk did not object to his designation as a career offender for sentencing purposes in the District Court, we review for plain error. Fed.R.Crim.P. 52(b). To grant the relief requested under this standard, we would need to conclude not only that the District Court erred in classifying Polk as a career offender, but that the error was plain, and it affected adversely "substantial rights" of Polk as well as the "fairness, integrity, or public reputation of judicial proceedings." *United States v. Davis*, 407 F.3d 162, 164 (3d Cir.2005) (quoting *United States v. Evans*, 155 F.3d 245, 251 (3d Cir.1998)).

If we determine the error was not plain, Polk's counsel offers an alternative argument of ineffective assistance of counsel based on his failure to raise *Begay* and its arguable effect at sentencing. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to prevail on this claim counsel's performance must be deficient, *id.* at 687, 104 S.Ct. 2052 ("In light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent

assistance."), and prejudicial, *id.* at 690, 104 S.Ct. 2052 (in this context, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

## III.  Discussion

### A.

Polk argues that his § 1791(a)(2) conviction cannot serve as a predicate "crime of violence" for the purpose of designating him as a career offender.  Under the Career Offender Guidelines, a "crime of violence" is defined as

> any offense under federal or state law . . . that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

In *Kenney*, we held that "whatever an inmate's intentions[,] his possession of a weapon in a prison inherently, and accordingly 'by its nature,' presents 'a serious potential risk of physical injury' to other persons in the prison."  310 F.3d at 137. Reviewing the nature of the offense, we determined that potential risk of violence or injury is enough to qualify a § 1791(a)(2) offense as a "crime of violence" under the "otherwise involves" clause of that definition in the Career Offender Guidelines.  *Id.* Thus, the success of Polk's appeal turns on whether the analysis endorsed in *Kenney* still applies post-*Begay*.

In *Begay*, the Supreme Court addressed the "violent felony" provision of the Armed Career Criminal Act (ACCA).  128 S.Ct. at 1583.  That provision states, in pertinent part, that a "violent felony" is

> any crime . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another;  or (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).  The Court held that, to qualify as a "violent felony" under the "otherwise involves" clause of this provision, an offense must (1) present a serious potential risk of physical injury *and* (2) be "roughly similar, in kind as well as degree of risk posed, to the examples [burglary, arson, extortion, or use of explosives] themselves."  *Begay*, 128 S.Ct. at 1585–86.  The Court noted that the important common attributes of the listed crimes are that they involve "purposeful, violent, and aggressive conduct."  *Id.* at 1586.

The question we face is whether *Begay*'s analysis—that offenses must involve "purposeful, violent, and aggressive conduct" to qualify as a "violent felony" for ACCA purposes—also applies to the Career Offender Guidelines.  Pre-*Begay*, our Court stated that though the language of the ACCA's "violent felony" provision is nearly identical to the Career Offender Guidelines' definition of a "crime of violence," these two sections are not necessarily coextensive.  *United States v. Parson*, 955 F.2d 858, 870 (3d Cir.1992).  However, the Supreme Court has since vacated and remanded for reconsideration, in light of *Begay*, Courts of Appeals' decisions applying the Career Offender Guidelines' "otherwise involves" clause.  *See, e.g., Archer v. United States*, —— U.S. ——, 128 S.Ct. 2051, 170 L.Ed.2d 790 (2008) (vacating *United States v. Archer*, 243 Fed.Appx. 564 (11th Cir.2007) (carrying a concealed weapon));  *Tiger v. United States*, —— U.S. ——, 128 S.Ct. 2048, 170 L.Ed.2d 789 (2008) (vacating *United States v. Tiger*, 240 Fed.Appx. 283 (10th Cir.2007) (driving

under the influence)). This leaves little doubt that *Begay* bears on our determination of whether to classify an offense as a "crime of violence." [1]

■ Given *Begay*'s applicability to the offense at issue here, we hold that possession of a weapon, even in a prison, is not "roughly similar, in kind as well as in degree of risk posed," to the enumerated crimes of burglary, arson, extortion, or use of explosives. 128 S.Ct. at 1585. While no doubt possession of a weapon in prison involves a high degree of risk, *Begay* points out that even a serious potential for injury is not enough to qualify a crime for career offender enhancement; the risk created must also be "similar in kind" to the crimes set out. *Id.* They involve overt, active conduct that results in harm to a person or property. *See United States v. Templeton*, 543 F.3d 378, 383 (7th Cir. 2008). The possibility that one will confront another person with violent results is not sufficient. *See id.*

Post-*Begay*, the distinction between active and passive crimes is vital when evaluating offenses under the Career Offender Guidelines to determine if they entail "purposeful, violent, and aggressive conduct." While possessing a weapon in prison is purposeful, in that we may assume one who possesses a shank intends that possession, it cannot properly be characterized as conduct that is itself aggressive or violent, as only the potential exists for aggressive or violent conduct. Much like carrying a concealed weapon, the offense is a "passive crime centering around *possession*, rather than around any overt action.... The act of possession does not, without more ...,

involve any aggressive or violent behavior." *United States v. Archer*, 531 F.3d 1347, 1351 (11th Cir.2008) (emphasis in original). Each of the crimes noted in the ACCA and the Career Offender Guidelines affects, directly and aggressively, the victims involved or their property. According to the Supreme Court, by providing the examples Congress meant for the "statute to cover only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 128 S.Ct. at 1585 (emphasis in original).

The Government urges us, in analyzing the nature of Polk's offense, to emphasize that his possessory crime occurred in a prison context, an environment in which heightened security is required and no permissible use exists for a prisoner to possess a weapon. That was the basis of our analysis in *Kenney*, 310 F.3d at 137, as well as pre-*Begay* decisions of other Circuit Courts reaching the same conclusion. *See, e.g., United States v. Vahovick*, 160 F.3d 395, 397 (7th Cir.1998) (determining that there is no acceptable use for a weapon by an inmate and that "prisons are inherently dangerous places and they present unique problems"); *United States v. Young*, 990 F.2d 469, 472 (9th Cir.1993) ("The confines of prison preclude any recreational uses for a deadly weapon and render its possession a serious threat to the safety of others.").

---

1. We need not decide whether and to what extent our decision in *Parson* remains effective after *Begay*. It is sufficient here to recognize that, though *Parson* says the definitions of "violent felony" and "crime of violence" in the ACCA and the Career Offender Guidelines, respectively, are not coextensive, *Begay* and the remands from the Supreme Court that have followed it indicate that the definitions are close enough that precedent under

the former must be considered in dealing with the latter. *See, e.g., United States v. Stinson*, 574 F.3d 244, 246 (3d Cir.2009) ("Although this case involves the Guidelines, the definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Guidelines that authority interpreting one is generally applied to the other.").

 *Begay* excludes that mode of analysis, however. We do not dispute the inherent dangers of possessing a shank in prison, but this alone cannot transform a mere possession offense into one that is similar to the crimes listed. Thus, a § 1791(a)(2) conviction for possession of a prohibited object designed to be used as a weapon in prison is not a "crime of violence" for purposes of the Career Offender Guidelines. We recognize that our decision is at odds with the Tenth Circuit Court's recent decision in *United States v. Zuniga,* 553 F.3d 1330 (10th Cir.2009). While we understand that Court's desire to continue treating possession of a weapon in prison as a "crime of violence," we cannot agree with its reasoning that the likelihood or potential for violent and aggressive behavior to come about as a result of the offense is sufficient for qualification in light of Begay. *Id.* at 1335.

### B.

The District Court erred in sentencing Polk as a career offender, but because he did not object at sentencing, the fact that it was an error is not enough for us to grant the relief requested. The existence of the Tenth Circuit Court's *Zuniga* decision, from which a district court could reasonably conclude that our *Kenney* analysis was still sound after *Begay,* makes us disinclined to conclude that the District Court's error here was plain. However, it is not necessary to determine if the error was plain in this instance, because we agree with the argument of Polk's attorney that he (the attorney) was ineffective at sentencing based on his failure to raise *Begay* and its arguable effect.

Defendants are not generally permitted to attack the efficacy of their counsel on direct appeal, though an exception will be made "[w]here the record is sufficient to allow determination of ineffective assistance of counsel, [and thus] an evidentiary hearing to develop the facts is not needed." *United States v. Headley,* 923 F.2d 1079, 1083 (3d Cir.1991). While Polk's attorney did an outstanding job on appeal, he freely concedes that at sentencing he missed the arguable effect of *Begay.* This admission satisfies *Strickland*'s requirements to prove ineffective assistance of counsel, as the oversight was objectively deficient at the time of the omission (as noted, *Begay* had been decided six months before Polk's sentencing hearing) and prejudiced Polk (our holding here indicates that the result of the sentencing proceeding would have been different than what occurred). *See* 466 U.S. at 687, 689, 694, 104 S.Ct. 2052. Because the record is sufficient to make this determination, we conclude that a further collateral proceeding for factual development on this issue is unnecessary.[2]

\* \* \* \* \* \*

As *Kenney* no longer remains good law and possession of a weapon in prison should not be considered a "crime of violence" under the Career Offender Guidelines post-*Begay,* we vacate the District Court's order and remand for resentencing consistent with this opinion.

---

**2.** We emphasize that we are not opening the door to ineffective assistance of counsel claims on direct appeal as a matter of course. We are, rather, dealing with a very unusual case here, in which there is a Supreme Court decision that represents a marked change in the law and, in addition, there is an adequate record involving highly competent and respected defense counsel freely acknowledging that his failure to cite that important new case had nothing to do with a strategic decision but was simply an oversight.