PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

JERMAINE MOBLEY,

      *Defendant-Appellant.*

No. 11-4391

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(5:10-cr-00278-BR-1)

Argued: March 21, 2012

Decided: July 13, 2012

Before TRAXLER, Chief Judge, and KING and WYNN,
Circuit Judges.

Affirmed by published opinion. Judge King wrote the majority opinion, in which Chief Judge Traxler joined. Judge Wynn wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Yvonne Victoria Watford-McKinney, OFFICE OF

THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

KING, Circuit Judge:

On December 6, 2010, Jermaine Mobley pleaded guilty in the Eastern District of North Carolina to the offense of possession of a prohibited object in prison, in violation of 18 U.S.C. § 1791(a)(2). The sentencing court thereafter found Mobley to be a career offender under § 4B1.1 of the Sentencing Guidelines and imposed a sentence of thirty-seven months. On appeal, Mobley challenges his sentence, maintaining that the court erred in ruling that his offense of conviction constituted a crime of violence for purposes of the career offender sentencing enhancement of the Guidelines. As explained below, we reject Mobley's contention and affirm.

I.

At the time of his offense, Mobley was serving a 151-month sentence at FCI Butner, near Raleigh, North Carolina, for his prior federal convictions of possession with intent to distribute heroin and being a felon in possession of a firearm. On September 14, 2009, Mobley visited Butner's infirmary, complaining of pain and numbness in his feet. During the infirmary visit, an attending physical therapist picked up Mobley's right shoe to examine its insole. Mobley promptly

seized the shoe from the therapist and removed an eight-inch "shank" that had been concealed in the shoe's insole.[1] The therapist saw the shank and, despite Mobley's efforts to hide it under an examination table, the shank was recovered by the prison staff.

On August 18, 2010, Mobley was charged in a single-count indictment of, while an inmate at FCI Butner, "possess[ing] a prohibited object, to wit, a shank, in violation of Title 18, United States Code, Section 1791(a)(2)." J.A. 6.[2] Section 1791(a)(2) provides, in part, that "whoever[,] being an inmate of a prison, . . . possesses . . . a prohibited object [shall be guilty of an offense against the United States]." The term "prohibited object" is defined in § 1791 with a litany of specifics, including weapons, controlled substances, currency, and telephones. Relevant to Mobley's offense of conviction, the statutory definition includes "an object that is designed or intended to be used as a weapon or to facilitate escape from a prison." 18 U.S.C. § 1791(d)(1)(B). Punishment for the offense of conviction is a fine or "imprisonment for not more than 5 years, or both." *Id.* § 1791(b)(3).

After Mobley pleaded guilty, a probation officer prepared a presentence investigation report ("PSR"). The PSR calculated Mobley's base offense level under the Guidelines as 13, then applied the career offender sentencing enhancement to

---

[1]Mobley acknowledges that a shank, which is an improvised sharpened instrument, is a dangerous weapon. At sentencing, Mobley's counsel referred to the shank as a "weapon" with "the potential for serious injury." J.A. 19; *see also United States v. Perez-Jiminez*, 654 F.3d 1136, 1142 (10th Cir. 2011) ("It is patent that such shanks are a deadly weapon."). The prosecutor explained that shanks "are made by inmates from bits and pieces of metal" and sharpened against concrete. J.A. 21. We have previously described a shank as a homemade knife or "a handmade sharp instrument." *United States v. Caro*, 597 F.3d 608, 610 (4th Cir. 2010); *United States v. Perry*, 335 F.3d 316, 318 (4th Cir. 2003).

[2]Citations herein to "J.A.___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

increase his base offense level to 17. The PSR reduced the offense level by three for acceptance of responsibility, resulting in a total offense level of 14. Mobley's criminal history category was VI, and the advisory sentencing range for an offense level of 14 and a criminal history category of VI is thirty-seven to forty-six months. If the career offender sentencing enhancement had not been applied, Mobley's total offense level would have been 10, and his sentencing range would have been twenty-four to thirty months. Pursuant to § 4B1.1 of the Guidelines, a convicted defendant is considered to be a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;

> (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a).

Mobley was thirty-six years old at the time of his offense of conviction, and he then had at least two prior felony convictions for controlled substance offenses. At his sentencing hearing, Mobley objected to the district court's application of the career offender enhancement, contending that possession of a shank in prison failed to qualify as a crime of violence. The court overruled this objection, however, ruling that the instant offense of conviction constitutes a crime of violence, and explaining that "there is no passive possession of a weapon in a prison setting." J.A. 24. Mobley filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

A determination of whether a defendant's offense of conviction constitutes a crime of violence under § 4B1.2(a) of the Guidelines is a legal issue that we review de novo. *See United States v. Jenkins*, 631 F.3d 680, 682 (4th Cir. 2011).

## III.

## A.

The term "crime of violence" is defined in the Guidelines as any offense "punishable by imprisonment for a term exceeding one year," and that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a). The primary issue in Mobley's appeal is whether his offense of conviction falls within the "residual clause" of § 4B1.2(a)(2) — that is, whether possession of a shank while in prison at Butner "otherwise involves conduct that presents a serious potential risk of physical injury to another."

On appeal, Mobley maintains that "mere possession" of a shank in prison does not, under the relevant authorities, involve the active or assaultive conduct required of a crime of violence under the Guidelines. He asserts that mere possession of a shank in prison is a passive crime and does not constitute confrontational conduct, and that the offense of conviction does not present the serious risk of physical injury

contemplated by the Guidelines in defining a crime of violence.

In order to properly assess this issue, it is necessary to briefly review the relevant legal principles and Guidelines commentary. The Supreme Court has identified and explained the principles underlying what constitutes a violent felony under the Armed Career Criminal Act (the "ACCA"), or, for the purposes of this appeal, a crime of violence under § 4B1.2 of the Guidelines. *See, e.g.*, *Sykes v. United States*, 131 S. Ct. 2267 (2011); *Chambers v. United States*, 555 U.S. 122 (2009); *Begay v. United States*, 553 U.S. 137 (2008).[3]

In *Begay*, the Supreme Court explained the ACCA's enumerated offenses of burglary, arson, or extortion, "as limiting the crimes that [the residual clause] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves," but it declined to include driving under the influence as one of those "roughly similar" offenses. *Begay*, 553 U.S. at 143. Last year, in *Sykes*, the Supreme Court focused on the question of whether the offense of intentional vehicular flight was comparable in degree of risk to the enumerated offenses. *Sykes*, 131 S. Ct. at 2273. The Court concluded in the affirmative, determining that a "[r]isk of violence is inherent to vehicle flight," is at least equal to the enumerated offenses of burglary and arson. *Id.* at 2274.[4]

---

[3]We have frequently observed that the ACCA's definition of a "violent felony," set forth in 18 U.S.C. § 924(e)(2)(B), is nearly identical to the Guidelines' definition of "crime of violence" in § 4B1.2(a). *See*, *e.g.*, *United States v. Jenkins*, 631 F.3d 680, 683 (4th Cir. 2011). As a result of the similarities between the two definitions, we are entitled to "rely upon precedents evaluating whether an offense constitutes a violent felony under [the ACCA] interchangeably with precedents evaluating whether an offense constitutes a crime of violence under [the Guidelines]." *United States v. Clay*, 627 F.3d 959, 965 (4th Cir. 2010).

[4]Mobley and the government disagree about whether and to what extent *Sykes* limited the application of *Begay*'s similar-in-kind test. There is no need to resolve that issue in this case, however, because, as we will explain, Mobley's sentence may be affirmed under *Begay*.

The commentary to § 4B1.2, more specifically Application Note 1 thereof, expands upon the roster of enumerated offenses by specifying additional ones, such as manslaughter and kidnapping, that also constitute crimes of violence, *see* USSG § 4B1.2, cmt. n.1 ("'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling."), and by identifying various offenses that *do not* constitute crimes of violence, such as unlawful possession of several types of firearms. *See id.* ("'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a).").[5] The crimes specified in Application Note 1 of the commentary to § 4B1.2 serve as additional enumerated offenses, or "example crimes," to be considered when determining whether a prior conviction or an instant offense of conviction otherwise involves conduct that presents a serious potential risk of physical injury to another. *See Peterson*, 629 F.3d at 438 ("Although the language of ACCA that was considered in *Begay* is identical to the language in USSG § 4B1.2(a)(2), the commentary to § 4B1.2(a)(2) *adds to the list of example* crimes listed in § 4B1.2(a)(2)[.]"); *accord United States v. Marrero*, 677 F.3d 155, 164 (3d Cir. 2012) ("[O]ffenses listed in Application Note 1 [to USSG § 4B1.2] are 'enumerated' for purposes of the crime-of-violence analysis."). With these principles in mind, we turn to the specifics of Mobley's contention.

1.

Mobley's position on appeal relies heavily on the Third Circuit's decision in *United States v. Polk*, 577 F.3d 515 (3d

---

[5]Application Note 1 of the commentary to § 4B1.2 is neither inconsistent with nor an erroneous reading of § 4B1.2(a), and is therefore authoritative and binding. *See United States v. Peterson*, 629 F.3d 432, 435 (4th Cir. 2011); *United States v. Hood*, 628 F.3d 669, 672-73 (4th Cir. 2010).

Cir. 2009). Like Mobley, Polk had been convicted of possessing a shank in prison, in violation of 18 U.S.C. § 1791(a)(2). The district court sentenced Polk as a career offender, characterizing his instant offense of conviction as a crime of violence. The Third Circuit reversed, applying the Supreme Court's analysis in *Begay* and determining that possession of a weapon — "even in a prison" — is not similar in kind or degree of risk posed to the enumerated offenses and, thus, does not constitute a crime of violence under the career offender sentencing enhancement found in § 4B1.2 of the Guidelines. The court of appeals explained:

> While no doubt possession of a weapon in prison involves a high degree of risk, *Begay* points out that even a serious potential for injury is not enough to qualify a crime for career offender enhancement; the risk created must also be "similar in kind" to the crimes set out [in Guidelines § 4B1.2(a)(2)]. They involve overt, active conduct that results in harm to a person or property. The possibility that one will confront another person with violent results is not sufficient.
>
> * * *
>
> While possessing a weapon in prison is purposeful, in that we may assume one who possesses a shank intends that possession, it cannot properly be characterized as conduct that is itself aggressive or violent, as only the potential exists for aggressive or violent conduct.

*Polk*, 577 F.3d at 519 (citations omitted).

The Third Circuit, however, has been the only court of appeals to adopt the position advanced by Mobley in this case. Three other of our sister circuits, the Fifth, Eighth, and Tenth, have addressed the same issue and reached a different

conclusion. *See United States v. Marquez*, 626 F.3d 214 (5th Cir. 2010); *United States v. Boyce*, 633 F.3d 708 (8th Cir. 2011); *United States v. Perez-Jiminez*, 654 F.3d 1136 (10th Cir. 2011). The Fifth Circuit in *Marquez* reasoned that possession of a deadly weapon by a prison inmate is similar in kind and degree of risk posed to the crime of burglary because, "(l)ike burglary, the 'main risk' of an inmate in possession of a deadly weapon is 'the possibility of a face-to-face confrontation' with another person." *Id.* at 222 (quoting *Begay*, 553 U.S. at 144-45).

Similarly, in *Boyce*, the Eighth Circuit determined that possession of a weapon in prison presents a serious potential risk of physical injury to another, inasmuch as there is no lawful reason for a prison inmate to ever have a weapon. *See* 633 F.3d at 711. The court concluded that possession of a weapon in prison is roughly similar in kind and degree of risk posed to the enumerated crimes of burglary, arson, and extortion. *Id.* at 712. The Eighth Circuit thereby rejected the view taken by the Third Circuit in *Polk*, reasoning that an inmate's possession of a weapon in prison involves purposeful, violent, and aggressive conduct, and that it creates a likelihood of future violent confrontations, much like the enumerated offenses. *Id.* at 711-12.

Finally, the Tenth Circuit, in *Perez-Jiminez*, rendered a decision last year that is essentially on all fours with this appeal, concluding, in a post-*Sykes* setting, that "possessing a dangerous or deadly weapon in prison 'enables violence.'" 654 F.3d at 1143 (quoting *Boyce*, 633 F.3d at 712). Perez-Jiminez was, like Mobley, prosecuted for violating 18 U.S.C. § 1791(a)(2), and the court of appeals was called upon to assess the very question we face, that is, whether possession of a shank in prison constitutes a crime of violence under the career offender sentencing enhancement.[6] The Tenth Circuit

---

[6]The *Marquez* and *Boyce* cases — unlike *Perez-Jiminez* and Mobley's case — involved the issue of whether a prior state conviction for possession of a shank in prison was a crime of violence. The analysis conducted in *Marquez* and *Boyce*, however, is also governed by the Supreme Court's precedents and is the very analysis that we conduct here.

ruled that it did, observing that there is no innocent purpose for the possession of a dangerous weapon by a prison inmate, and concluding that such possession amounts to a crime of violence for purposes of the career offender sentencing enhancement. *Id.* at 1143-44. The court explained:

> Outside of prison, [t]he felon who unlawfully possesses a firearm, although disobeying the law, may have a legitimate use intended for the firearm, such as target shooting or collecting. But there is no similarly innocent purpose behind the possession of a deadly weapon by a prison inmate, as [t]he confines of prison preclude any recreational uses for a deadly weapon.
>
> [T]here is no legitimate purpose for a prisoner to carry a weapon designed to kill, injure or disable another. On the contrary, the only reason to carry such a weapon is to use it to attack another or to deter an attack.

*Id.* at 1143 (citations and internal quotation marks omitted).

Put simply, we agree with the Fifth, Eighth, and Tenth Circuits that possession of a shank in prison, in contravention of § 1791(a)(2), constitutes a crime of violence under § 4B1.2(a)(2) of the Guidelines. That offense is similar in kind and degree of risk posed to the enumerated offenses, in that a prison inmate's possession of a weapon constitutes a "purposeful, violent, and aggressive" offense and "[s]erious and substantial risks are . . . inherent" to the crime. *Begay*, 553 U.S. at 144-45; *Sykes*, 131 S. Ct. at 2276. As the government emphasizes, we have recognized that "it is virtually impossible to eliminate violence among the incarcerated." *Taylor v. Freeman*, 34 F.3d 266, 273 n.6 (4th Cir. 1994). Like the offense of burglary of a dwelling, the availability of contraband weapons in the prison context obviously facilitates violence and injury. *See Shrader v. White*, 761 F.2d 975, 991

(4th Cir. 1985) (Sprouse, J., dissenting); *see also Marquez*, 626 F.3d at 221-22 (recognizing that possession of weapon in prison is similar to burglary because violent aspects lie in potential for confrontation). We therefore readily agree with the Tenth Circuit's summation in *Perez-Jiminez* that "[T]here is no legitimate purpose for a prisoner to carry a weapon designed to kill, injure or disable another. On the contrary, the only reason to carry such a weapon is to use it to attack another or to deter an attack." 654 F.3d at 1143.

2.

The identification of additional enumerated offenses in Application Note 1 to the commentary to § 4B1.2 reinforces our conclusion today. Although the unlawful possession of most firearms is not a crime of violence for purposes of § 4B1.2, Application Note 1 specifies that "[u]nlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a 'crime of violence.'" USSG § 4B1.2, cmt. n.1. When these offenses and the others listed in Application Note 1 are included with those specified in the text of § 4B1.2(a)(2), *see Peterson*, 629 F.3d at 439, there are at least eleven "enumerated offenses" identified for career-offender purposes: (1) burglary of a dwelling; (2) arson; (3) extortion; (4) crimes involving the use of explosives; (5) murder; (6) manslaughter; (7) kidnapping; (8) aggravated assault, (9) forcible sex offenses; (10) robbery; and (11) possession of a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun. Applying the *Begay* analysis to this expanded list of enumerated offenses, the question is "whether the predicate offense under consideration is 'roughly similar, in kind, as well as in degree of risk posed, to the examples.'" *Peterson*, 629 F.3d at 439 (quoting *Begay*, 553 U.S. at 143)).

Under the *Begay* analysis, the offense of possessing a shank in prison is similar in kind to the offense of possessing a § 5845(a) weapon outside of prison. Both of these crimes pro-

hibit the possession of dangerous weapons in contexts where they have no lawful purpose. Moreover, because a conviction under § 1791(a)(2) requires proof that the inmate *knowingly* possessed the prohibited object, *see, e.g.*, *United States v. Holmes*, 607 F.3d 332, 336-37 (3d Cir. 2010), § 1791(a)(2) requires "purposeful" conduct. And while possession of a shank in prison may not involve the same kind of "active" violence and aggression reflected in certain of the other enumerated offenses — such as a murder or a forcible sexual assault — it does involve a similar level of potential violence and aggression reflected in the possession of the weapons, such as a sawed-off shotgun, specified in 26 U.S.C. § 5845(a).

As a result, we are convinced that possession of a shank by an inmate in prison is similar in kind and degree of risk posed to the offenses enumerated in the text of § 4B1.2 and in its binding commentary. We are therefore firmly of the view that Mobley's offense of conviction "presents a serious potential risk of physical injury to another," and that his offense of conviction constitutes a crime of violence for purposes of the career offender enhancement. USSG § 4B1.2(a)(2).[7]

---

[7]Finally, Mobley also contends on appeal that the residual clause of USSG § 4B1.2(a)(2) should be stricken as unconstitutionally vague. In the alternative, he argues that the residual clause is ambiguous and does not apply to him because of the rule of lenity. We reject these contentions, however, as the Supreme Court has already determined that the residual clause falls "within congressional power to enact" and constitutes "an intelligible principle [that] provides guidance that allows a person to 'conform his or her conduct to the law.'" *Sykes v. United States*, 131 S. Ct. 2267, 2277 (2011) (citations omitted). Moreover, contrary to the view of our good dissenting colleague, the rule of lenity does not apply in this case. *See United States v. Helem*, 186 F.3d 449, 455 (4th Cir. 1999). Put simply, there is no ambiguity in USSG § 4B1.2(a)(2), and the rule of lenity thus has no application here. The residual clause encompasses conduct that creates a serious potential risk of injury to another, and, as we have already explained, the possession of a shank in prison plainly creates such a risk.

IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

*AFFIRMED*

WYNN, Circuit Judge, dissenting:

This case turns on whether mere possession of a shank in prison is a crime of violence subject to enhanced sentencing under the career offender provision of the United States Sentencing Guidelines. Possession of a shank is not a violent crime enumerated in the relevant provision, nor is it similar to the enumerated offenses—a requirement for application of the enhancement under controlling Supreme Court precedent. At the very least, whether the enhancement applies is ambiguous and must therefore be construed in Defendant's favor. Accordingly, I must respectfully dissent from the contrary view presented by my colleagues in the majority opinion.

I.

Defendant Jermaine Mobley pled guilty to possession of a shank in prison in violation of 18 U.S.C. § 1791(a)(2). He was sentenced as a career offender pursuant to § 4B1.1(a) of the United States Sentencing Guidelines ("U.S.S.G."), which provides, in relevant part:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time (2) the instant offense of conviction is . . . a crime of violence . . . and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The sentencing guidelines define a "crime of violence" as any offense "punishable by imprison-

ment for a term exceeding one year that—has an element of . . . force" or, "is burglary of a dwelling, arson, or extortion, involves the use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." U.S.S.G. § 4B1.2(a) (emphasis added). Mobley's possession of a shank in prison was classified as a violent crime under the latter, emphasized clause ("residual clause"). It is this classification that Mobley challenges on appeal.

## II.

Our interpretation of the career offender provision is informed by precedent construing the Armed Career Criminal Act ("A.C.C.A."). *See United States v. Jarmon*, 596 F.3d 228, 231 n.* (4th Cir. 2010) ("[P]recedents evaluating the A.C.C.A. apply with equal force to U.S.S.G. § 4B1.2."). This is because the A.C.C.A. definition of "violent felony" is "nearly identical to the Career Offender Guidelines' definition of a 'crime of violence.'" *United States v. Polk*, 577 F.3d 515, 518 (3d Cir. 2009)(citation omitted). *See also United States v. King*, 673 F.3d 274, 279 n.3 (4th Cir. 2012) ("We rely on precedents evaluating whether an offense constitutes a 'crime of violence' under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a 'violent felony' under the ACCA, because the two terms have been defined in a manner that is 'substantively identical.'" (citation omitted)).

In the past four years, the Supreme Court has addressed whether particular convictions were properly classified as "violent felonies" under the A.C.C.A.'s residual clause on three separate occasions. *See Sykes v. United States*, 131 S. Ct. 2267 (2011); *Chambers v. United States*, 555 U.S. 122 (2009); *Begay v. United States*, 553 U.S. 137 (2008). In considering whether particular offenses were "violent," the Supreme Court "tailored [its opinion] to the crime at hand" and declined to use a monolithic, bright-line test. *United States v. Herrick*, 545 F.3d 53, 58 (1st Cir. 2008). Neverthe-

less, not only did no case overrule a predecessor, but in fact all three cases spoke to the same core concern first identified in *Begay*—namely that violent felonies must both "present[ ] a serious potential risk of physical injury to another" and be "similar, in kind as well as in degree of risk posed, to the examples" set out in the statute. *Begay*, 553 U.S. at 141, 143. The Supreme Court clarified what it meant by similar in kind, explaining that each of the offenses enumerated in the statute is characterized by "purposeful, violent, and aggressive conduct."[1] *Id.* at 144-45.

In *Chambers*, the Supreme Court held that "'failure to report' for penal confinement" was not a violent felony. 555 U.S. at 123. The Supreme Court reasoned that "the crime amounts to a form of inaction, a far cry from the 'purposeful, violent, and aggressive' conduct potentially at issue when an offender uses explosives against property, commits arson, [or] burgles a dwelling . . . ." *Id.* at 128 (citing *Begay*, 553 U.S. at 144-45). The Supreme Court also explained that, while failure to report for confinement necessarily requires intentional conduct, there is "no reason to believe" that the specific conduct constituting the crime is either violent or aggressive. *Id.* Indeed, the Supreme Court specifically rejected the prosecution's argument that the failure to report demonstrated a "strong aversion to penal custody" that suggested a possibility or likelihood of future violence. *Id.*[2]

---

[1]While the Supreme Court did not define "violent" and "aggressive," the First Circuit has noted that the plain meaning of violent is "marked by extreme force or sudden intense activity," and that the plain meaning of aggressive is "tending toward or exhibiting aggression," with aggression defined as "forceful action or procedure (as an unprovoked attack) esp. when intended to dominate or master." *Herrick*, 545 F.3d at 58 (quotation marks and citation omitted).

[2]The Supreme Court further explained that "the question is whether such an offender is significantly more likely than others to attack, or physically to resist an apprehender, thereby producing a serious potential risk of physical injury." *Chambers*, 555 U.S. at 128-29. Here, there was no showing that Defendant, or others in possession of shanks, are "significantly more likely than others to attack." *Id.* On the contrary, the Government even argued that possession outside the presence of any other person, such as in an empty cell, would still constitute a crime of violence.

In *Sykes*, the Supreme Court held that "felony vehicle flight" is properly categorized as a violent felony. While the Supreme Court focused primarily on the risk inherent in the act of fleeing arrest, it nevertheless recognized the relevance of the *Begay* characterization of the enumerated offenses. *See Sykes*, 131 S. Ct. at 2275 ("In many cases the purposeful, violent, and aggressive inquiry will be redundant . . . ."). Indeed, the opinion underscored the nature of the conduct at issue in felony vehicle flight, describing it as "entail[ing] intentional release of a destructive force dangerous to others" and necessarily consisting of "a provocative and dangerous act." *Id.* at 2273.

The conduct at issue in this case, possession of a shank in prison, is simply not similar in kind to "burglary of a dwelling, arson, or extortion" and crimes "involv[ing] the use of explosives." U.S.S.G**.** § 4B1.2(a). I agree with the Third Circuit's conclusion in *Polk* that there is a fundamental difference between the "purposeful, violent, and aggressive" enumerated offenses and the "passive crime[ ]" of mere possession. 577 F.3d at 519.

Possession of a shank in prison "amounts to a form of inaction, a far cry from the 'purposeful, violent, and aggressive' conduct potentially at issue when an offender uses explosives against property, commits arson, [or] burgles a dwelling . . . ." *Chambers*, 555 U.S. at 128 (quoting *Begay*, 553 U.S. at 144-45). It does not involve "initiating hostilities or attacks," engaging in threatening behavior which "directly impact[s] a victim," *United States v. Marquez*, 626 F.3d 214, 229 (5th Cir. 2010) (Dennis, J., dissenting), or "releas[ing] . . . destructive force" against persons or property. *Sykes*, 131 S. Ct. at 2273. Prisoners charged with possession alone need not have attempted, or even threatened, to harm anyone.[3] They

---

[3]Indeed, it would seem likely that, where an inmate is charged with only possession, he has not threatened or attempted to injure anyone. Presumably, more aggressive and violent actions would result in more serious charges, such as attempted assault.

may have obtained or fashioned a shank purely to protect themselves in the event of an attack. Indeed, the Government conceded at oral argument that its reasoning would allow prosecutors to seek enhanced sentencing of an inmate if a shank is discovered in his cell during a search for which he is not even present. This scenario is particularly troubling because it would allow for enhanced sentencing of a defendant who leaves a shank in his cell, declining to carry it with him where it could arguably endanger others, on the grounds that he has committed a "crime of violence." I cannot agree with the majority opinion that the career offender provision allows for this.

The Government also argues, and the majority opinion apparently agrees, that the prison context somehow transforms a shank into an extremely dangerous weapon. This argument seems to be premised on the fact that inmates cannot lawfully possess or use weapons for any purpose. *See Polk* 577 F.3d at 519. However, as the Third Circuit noted in *Polk*, "*Begay* excludes that mode of analysis" by requiring courts to consider the nature of the conduct constituting the crime. *Id.* at 520. The mere fact that an act is categorically unlawful does not necessarily render it a "dangerous and provocative act" that itself endangers others. *Sykes*, 131 S. Ct. at 2273. Indeed, failure to report for one's penal confinement cannot be accomplished in any lawful manner; but the Supreme Court nevertheless declared it to be non-violent. *See Chambers*, 555 U.S. at 128.

Congress has determined that mere possession of certain narrowly defined weapons is a crime of violence. U.S.S.G. § 4B1.2 cmt. 1. Congress has found that these weapons are "inherently dangerous" because "possessed unlawfully, [they] serve only violent purposes." *Marquez*, 626 F.3d at 232 (Dennis, J., dissenting) (quotation marks omitted). Examples of these weapons include "sawed-off shotgun[s] or sawed-off rifle[s], silencer[s], bomb[s], or machine gun[s]." U.S.S.G. § 4B1.2 cmt. 1. Not only are shanks (i.e., crude homemade

knives) not included in this list, but they are entirely dissimilar to the weapons that are included.

The statutory purpose of the career offender provision, as expressed in its title, is to provide enhanced sentencing for career criminals. Yet nothing indicates that prisoners who possess shanks are career offenders engaged in violent crimes, as opposed to, e.g., ordinary inmates in jail on non-violent drug charges with a crude weapon made for self-defense purposes only. For these reasons, I cannot join the majority opinion in concluding that mere possession of shank in prison is a crime of violence under the career offender provision.

III.

While I do not believe that the language of the career offender provision's residual clause supports the majority opinion's interpretation, at the very least I find the provision to be ambiguous. Such ambiguity in a penal statute requires that we consider the rule of lenity, which is applicable in the event of "'grievous ambiguity or uncertainty'" as to a statute's meaning. *United States v. Mitchell*, 39 F.3d 465, 470 (4th Cir. 1994) (quoting *Chapman v. United States*, 500 U.S. 453, 463 (1991)).

A statute is not necessarily ambiguous if it is "possible to articulate a construction more narrow than that urged by the government," or because there is "a division of judicial authority" on its interpretation. *Moskal v. United States*, 498 U.S. 103, 108 (1990) (emphasis omitted). However, these circumstances may evidence ambiguity, particularly when a statute can be reasonably interpreted in two different ways and "the legislative history does not amount to much." *United States v. Hayes*, 555 U.S. 415, 436 (2009) (Roberts, J., dissenting).

When a penal statute is ambiguous, we are not just permitted, but rather we are "*obliged* to apply the rule of lenity and

resolve the conflict in the defendant's favor." *United States v. Munn*, 595 F.3d 183, 194 (4th Cir. 2010).The rule of lenity serves as an important safeguard of defendants' constitutional rights by ensuring that they receive notice "'in language that the common world will understand, of what the law intends to do if a certain line is passed . . . ." *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 535 (4th Cir. 2005) (quoting *Babbitt v. Sweet Home Chapter of Cmty. for a Great Or.*, 515 U.S. 687, 704 n.18 (1995)). Thus, we must take seriously "the responsibility to derive from the text rules of application that will provide notice of what is covered and prevent arbitrary or discriminatory sentencing." *See James v. United States*, 550 U.S. 192, 216 (2007) (Scalia, J., dissenting). The rule of lenity also goes to the separation of powers and preserves accountability by ensuring that "'legislatures and not courts . . . define criminal activity.'" *Yi*, 412 F.3d at 535 (quoting *Babbitt*, 515 U.S. at 704 n.18).

There is very little legislative history on the A.C.C.A. Congress apparently adopted the act in an attempt to reduce crime by targeting a "particular segment of the criminal population" that habitually commits violent crime. H.R. Rep. 98-1073, at 2-3 (1985). However, there is little guidance as to the crimes intended to be covered by the residual clause.

In the residual clause, Congress provided "four examples [that] have little in common, most especially with respect to the level of risk of injury they pose." *James*, 550 U.S. at 229 (Scalia, J., dissenting); *accord Begay*, 553 U.S. at 142 (noting that if Congress had intended risk-only analysis of crimes, it would "likely have chosen examples that better illustrated the degree of risk it had in mind") (quotation marks omitted). As a result, several Supreme Court justices have vehemently criticized the residual clause and called for its revision. *See, e.g.*, *Sykes,* 131 S. Ct. at 2287 (Scalia, J., dissenting) (calling the clause a "drafting failure" that is "is too vague to yield an intelligible principle") (internal quotation marks omitted); *accord Begay*, 553 U.S. at 155 (Alito, J., dissenting) (noting

that the clause "calls out for legislative clarification").[4] Moreover, attempted application by circuit courts has resulted in increased confusion. *See Sykes*, 131 S. Ct. at 2285 (Scalia, J., dissenting) (noting that all of the circuits have struggled to apply the Supreme Court's holdings regarding the residual clause); *James*, 550 U.S. at 216 (Scalia, J., dissenting) ("It will take decades, and dozens of grants of certiorari, to allocate all the Nation's crimes to one or the other side of this . . . entirely indeterminate line.").

Given the residual clause's ambiguity and the confusion experienced, and created, by the courts, inmates lack sufficient notice that simple possession of a shank constitutes a crime of violence. Indeed, the first circuit to address convictions under 18 U.S.C. § 17919(a)(2), the statute at issue in this case, in relation to the career offender provision held that possession of a shank in prison does *not* constitute a crime of violence. *See Polk*, 577 F.3d at 520. Since *Polk*, only one other circuit has considered these precise provisions—and reached the opposite conclusion. *See United States v. Perez-Jiminez*, 654 F.3d 1136 (10th Cir. 2011).[5] While I acknowledge that varying judicial interpretation is not dispositive, the fact that federal appellate judges cannot agree on the ambit of a statute is, I believe, relevant to the question of whether it provides sufficient notice to the public. Because the residual clause amounts to "a sentencing statute that does not 'give a person

---

[4]This Court has also had difficulty interpreting the provision. *See, e.g.*, *United States v. Vann*, 660 F.3d 771, 787 (2011) (en banc) (Agee, J., concurring in judgment) ("[N]o matter how diligently and painstakingly my colleagues and I labor over the mystery of the . . . residual clause, a black hole of confusion and uncertainty stymies our best efforts.") (quotation marks omitted).

[5]Other circuits have considered similar state statutes and disagreed with *Polk. See, e.g., United States v. Boyce*, 633 F.3d 708 (8th Cir. 2011) (holding that possession of a homemade weapon in prison prohibited by a state statute is a violent felony under the A.C.C.A.), *cert. denied*, 132 S. Ct. 1002 (2012); *United States v. Zuniga*, 553 F.3d 1330 (10th Cir. 2009) (same).

of ordinary intelligence fair notice' of its reach," *Sykes*, 131 S. Ct at 2287 (Scalia, J., dissenting) (quoting *United States v. Batchelder*, 442 U.S. 114, 123 (1979)), this Court is obligated to apply the rule of lenity and construe the provision, as applied to possession of a shank in prison, in Defendant's favor.

### IV.

While I do not dispute the grave importance of penalizing the possession of weapons in prison in the interest of safety, I do not believe that it comports with the rules of statutory construction, Supreme Court precedent, the rule of lenity, or notions of fairness to punish an inmate with an enhanced "crime of violence" sentence for mere possession of a shank in prison. I would therefore vote to vacate Defendant's sentence and remand for re-sentencing. Accordingly, I must respectfully dissent.