WYNN, Circuit Judge,
dissenting:
This case turns on whether mere possession of a shank in prison is a crime of violence subject to enhanced sentencing under the career offender provision of the United States Sentencing Guidelines. Possession of a shank is not a violent crime enumerated in the relevant provision, nor is it similar to the enumerated offenses — a requirement for application of the enhancement under controlling Supreme Court precedent. At the very least, whether the enhancement applies is ambiguous and must therefore be construed in Defendant’s favor. Accordingly, I must respectfully dissent from the contrary view presented by my colleagues in the majority opinion.
I.
Defendant Jermaine Mobley pled guilty to possession of a shank in prison in violation of 18 U.S.C. § 1791(a)(2). He was sentenced as a career offender pursuant to § 4Bl.l(a) of the United States Sentencing Guidelines (“U.S.S.G.”), which provides, in relevant part:
A defendant is a career offender if (1) the defendant was at least eighteen years old at the time (2) the instant offense of conviction is ... a crime of violence ... and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.
U.S.S.G. § 4Bl.l(a). The sentencing guidelines define a “crime of violence” as any offense “punishable by imprisonment for a term exceeding one year that — has an element of ... force” or, “is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B1.2(a) (emphasis added). Mobley’s possession of a shank in prison was classified as a violent crime under the latter, emphasized clause (“residual clause”). It is this classification that Mobley challenges on appeal.
II.
Our interpretation of the career offender provision is informed by precedent construing the Armed Career Criminal Act (“A.C.C.A.”). See United States v. Jarmon, 596 F.3d 228, 231 n. * (4th Cir.2010) (“[Pjrecedents evaluating the A.C.C.A. apply with equal force to U.S.S.G. § 4B1.2.”). This is because the A.C.C.A. definition of *633 “violent felony” is “nearly identical to the Career Offender Guidelines’ definition of a ‘crime of violence.’ ” United States v. Polk, 577 F.3d 515, 518 (3d Cir.2009)(citation omitted). See also United States v. King, 673 F.3d 274, 279 n. 3 (4th Cir.2012) (“We rely on precedents evaluating whether an offense constitutes a ‘crime of violence’ under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a ‘violent felony’ under the ACCA, because the two terms have been defined in a manner that is ‘substantively identical.’ ” (citation omitted)).
In the past four years, the Supreme Court has addressed whether particular convictions were properly classified as “violent felonies” under the A.C.C.A.’s residual clause on three separate occasions. See Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011); Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009); Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). In considering whether particular offenses were “violent,” the Supreme Court “tailored [its opinion] to the crime at hand” and declined to use a monolithic, bright-line test. United States v. Herrick, 545 F.3d 53, 58 (1st Cir.2008). Nevertheless, not only did no case overrule a predecessor, but in fact all three cases spoke to the same core concern first identified in Begay — namely that violent felonies must both “presentf] a serious potential risk of physical injury to another” and be “similar, in kind as well as in degree of risk posed, to the examples” set out in the statute. Begay, 553 U.S. at 141, 143, 128 S.Ct. 1581. The Supreme Court clarified what it meant by similar in kind, explaining that each of the offenses enumerated in the statute is characterized by “purposeful, violent, and aggressive conduct.” [1] Id. at 144-45, 128 S.Ct. 1581.
In Chambers, the Supreme Court held that “ ‘failure to report’ for penal confinement” was not a violent felony. 555 U.S. at 123,129 S.Ct. 687. The Supreme Court reasoned that “the crime amounts to a form of inaction, a far cry from the ‘purposeful, violent, and aggressive’ conduct potentially at issue when an offender uses explosives against property, commits arson, [or] burgles a dwelling....” Id. at 128, 129 S.Ct. 687 (citing Begay, 553 U.S. at 144-45, 128 S.Ct. 1581). The Supreme Court also explained that, while failure to report for confinement necessarily requires intentional conduct, there is “no reason to believe” that the specific conduct constituting the crime is either violent or aggressive. Id. Indeed, the Supreme Court specifically rejected the prosecution’s argument that the failure to report demonstrated a “strong aversion to penal custody” that suggested a possibility or likelihood of future violence. Id.[2]
*634 In Sykes, the Supreme Court held that “felony vehicle flight” is properly categorized as a violent felony. While the Supreme Court focused primarily on the risk inherent in the act of fleeing arrest, it nevertheless recognized the relevance of the Begay characterization of the enumerated offenses. See Sykes, 131 S.Ct. at 2275 (“In many cases the purposeful, violent, and aggressive inquiry will be redundant____”). Indeed, the opinion underscored the nature of the conduct at issue in felony vehicle flight, describing it as “entailing] intentional release of a destructive force dangerous to others” and necessarily consisting of “a provocative and dangerous act.” Id at 2273.
The conduct at issue in this case, possession of a shank in prison, is simply not similar in kind to “burglary of a dwelling, arson, or extortion” and crimes “involving] the use of explosives.” U.S.S.G. § 4B1.2(a). I agree with the Third Circuit’s conclusion in Polk that there is a fundamental difference between the “purposeful, violent, and aggressive” enumerated offenses and the “passive crime[]” of mere possession. 577 F.3d at 519.
Possession of a shank in prison “amounts to a form of inaction, a far cry from the ‘purposeful, violent, and aggressive’ conduct potentially at issue when an offender uses explosives against property, commits arson, [or] burgles a dwelling. ...” Chambers, 555 U.S. at 128, 129 S.Ct. 687 (quoting Begay, 553 U.S. at 144-45, 128 S.Ct. 1581). It does not involve “initiating hostilities or attacks,” engaging in threatening behavior which “directly impacts] a victim,” United States v. Marquez, 626 F.3d 214, 229 (5th Cir.2010) (Dennis, J., dissenting), or “releas[ing] ... destructive force” against persons or property. Sykes, 131 S.Ct. at 2273. Prisoners charged with possession alone need not have attempted, or even threatened, to harm anyone.[3] They may have obtained or fashioned a shank purely to protect themselves in the event of an attack. Indeed, the Government conceded at oral argument that its reasoning would allow prosecutors to seek enhanced sentencing of an inmate if a shank is discovered in his cell during a search for which he is not even present. This scenario is particularly troubling because it would allow for enhanced sentencing of a defendant who leaves a shank in his cell, declining to carry it with him where it could arguably endanger others, on the grounds that he has committed a “crime of violence.” I cannot agree with the majority opinion that the career offender provision allows for this.
The Government also argues, and the majority opinion apparently agrees, that the prison context somehow transforms a shank into an extremely dangerous weapon. This argument seems to be premised on the fact that inmates cannot lawfully possess or use weapons for any purpose. See Polk, 577 F.3d at 519. However, as the Third Circuit noted in Polk, “Begay excludes that mode of analysis” by requiring courts to consider the nature of the conduct constituting the crime. Id. at 520. The mere fact that an act is categorically unlawful does not necessarily render it a “dangerous and provocative act” that itself endangers others. Sykes, 131 S.Ct. at 2273. Indeed, failure to report for one’s penal confinement cannot be accomplished in any lawful manner; but the Supreme Court nevertheless declared it to be nonviolent. See Chambers, 555 U.S. at 128, 129 S.Ct. 687.
*635 Congress has determined that mere possession of certain narrowly defined weapons is a crime of violence. U.S.S.G. § 4B1.2 cmt. 1. Congress has found that these weapons are “inherently dangerous” because “possessed unlawfully, [they] serve only violent purposes.” Marquez, 626 F.3d at 232 (Dennis, J., dissenting) (quotation marks omitted). Examples of these weapons include “sawed-off shotgun[s] or sawed-off rifle[s], silencer[s], bomb[s], or machine gun[s].” U.S.S.G. § 4B1.2 cmt. 1. Not only are shanks (i.e., crude homemade knives) not included in this list, but they are entirely dissimilar to the weapons that are included.
The statutory purpose of the career offender provision, as expressed in its title, is to provide enhanced sentencing for career criminals. Yet nothing indicates that prisoners who possess shanks are career offenders engaged in violent crimes, as opposed to, e.g, ordinary inmates in jail on non-violent drug charges with a crude weapon made for self-defense purposes only. For these reasons, I cannot join the majority opinion in concluding that mere possession of shank in prison is a crime of violence under the career offender provision.
III.
While I do not believe that the language of the career offender provision’s residual clause supports the majority opinion’s interpretation, at the very least I find the provision to be ambiguous. Such ambiguity in a penal statute requires that we consider the rule of lenity, which is applicable in the event of “ ‘grievous ambiguity or uncertainty’ ” as to a statute’s meaning. United States v. Mitchell, 39 F.3d 465, 470 (4th Cir.1994) (quoting Chapman v. United States, 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)).
A statute is not necessarily ambiguous if it is “possible to articulate a construction more narrow than that urged by the government,” or because there is “a division of judicial authority” on its interpretation. Moskal v. United States, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (emphasis omitted). However, these circumstances may evidence ambiguity, particularly when a statute can be reasonably interpreted in two different ways and “the legislative history does not amount to much.” United States v. Hayes, 555 U.S. 415, 436, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009) (Roberts, J., dissenting).
When a penal statute is ambiguous, we are not just permitted, but rather we are “obliged to apply the rule of lenity and resolve the conflict in the defendant’s favor.” United States v. Munn, 595 F.3d 183, 194 (4th Cir.2010). The rule of lenity serves as an important safeguard of defendants’ constitutional rights by ensuring that they receive notice “ ‘in language that the common world will understand, of what the law intends to do if a certain line is passed....’” Yi v. Fed. Bureau of Prisons, 412 F.3d 526, 535 (4th Cir.2005) (quoting Babbitt v. Sweet Home Chapter of Cmties. for a Great Or., 515 U.S. 687, 704 n. 18, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995)). Thus, we must take seriously “the responsibility to derive from the text rules of application that will provide notice of what is covered and prevent arbitrary or discriminatory sentencing.” See James v. United States, 550 U.S. 192, 216, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (Scalia, J., dissenting). The rule of lenity also goes to the separation of powers and preserves accountability by ensuring that “ ‘legislatures and not courts ... define criminal activity.’” Yi, 412 F.3d at 535 (quoting Babbitt, 515 U.S. at 704 n. 18, 115 S.Ct. 2407).
*636 There is very little legislative history on the A.C.C.A. Congress apparently adopted the act in an attempt to reduce crime by targeting a “particular segment of the criminal population” that habitually commits violent crime. H.R. Rep. 98-1073, at 2-3 (1985), 1984 U.S.C.C.A.N. 3661, 3662. However, there is little guidance as to the crimes intended to be covered by the residual clause.
In the residual clause, Congress provided “four examples [that] have little in common, most especially with respect to the level of risk of injury they pose.” James, 550 U.S. at 229, 127 S.Ct. 1586 (Scalia, J., dissenting); accord, Begay, 553 U.S. at 142, 128 S.Ct. 1581 (noting that if Congress had intended risk-only analysis of crimes, it would “likely have chosen examples that better illustrated the degree of risk it had in mind”) (quotation marks omitted). As a result, several Supreme Court justices have vehemently criticized the residual clause and called for its revision. See, e.g., Sykes, 131 S.Ct. at 2287 (Scalia, J., dissenting) (calling the clause a “drafting failure” that is “is too vague to yield an intelligible principle”) (internal quotation marks omitted); accord Begay, 553 U.S. at 155, 128 S.Ct. 1581 (Alito, J., dissenting) (noting that the clause “calls out for legislative clarification”).[4] Moreover, attempted application by circuit courts has resulted in increased confusion. See Sykes, 131 S.Ct. at 2285 (Scalia, J., dissenting) (noting that all of the circuits have struggled to apply the Supreme Court’s holdings regarding the residual clause); James, 550 U.S. at 216, 127 S.Ct. 1586 (Scalia, J., dissenting) (“It will take decades, and dozens of grants of certiorari, to allocate all the Nation’s crimes to one or the other side of this ... entirely indeterminate line.”).
Given the residual clause’s ambiguity and the confusion experienced, and created, by the courts, inmates lack sufficient notice that simple possession of a shank constitutes a crime of violence. Indeed, the first circuit to address convictions under 18 U.S.C. § 1791(a)(2), the statute at issue in this case, in relation to the career offender provision held that possession of a shank in prison does not constitute a crime of violence. See Polk, 577 F.3d at 520. Since Polk, only one other circuit has considered these precise provisions — and reached the opposite conclusion. See United States v. Perez-Jiminez, 654 F.3d 1136 (10th Cir.2011).[5] While I acknowledge that varying judicial interpretation is not dispositive, the fact that federal appellate judges cannot agree on the ambit of a statute is, I believe, relevant to the question of whether it provides sufficient notice to the public. Because the residual clause amounts to “a sentencing statute that does not ‘give a person of ordinary intelligence fair notice’ of its reach,” Sykes, 131 S.Ct. at 2287 (Scalia, J., dissenting) (quoting United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)), this Court is obligated to apply the rule of lenity and construe the provision, as applied to possession of a shank in prison, in Defendant’s favor.
*637 IV.
While I do not dispute the grave importance of penalizing the possession of weapons in prison in the interest of safety, I do not believe that it comports with the rules of statutory construction, Supreme Court precedent, the rule of lenity, or notions of fairness to punish an inmate with an enhanced “crime of violence” sentence for mere possession of a shank in prison. I would therefore vote to vacate Defendant’s sentence and remand for re-sentencing. Accordingly, I must respectfully dissent.

. While the Supreme Court did not define "violent” and "aggressive," the First Circuit has noted that the plain meaning of violent is “marked by extreme force or sudden intense activity,” and that the plain meaning of aggressive is "tending toward or exhibiting aggression,” with aggression defined as "forceful action or procedure (as an unprovoked attack) esp. when intended to dominate or master.” Herrick, 545 F.3d at 58 (quotation marks and citation omitted).

. The Supreme Court further explained that "the question is whether such an offender is significantly more likely than others to attack, or physically to resist an apprehender, thereby producing a serious potential risk of physical injury.” Chambers, 555 U.S. at 128-29, 129 S.Ct. 687. Here, there was no showing that Defendant, or others in possession of shanks, are "significantly more likely than others to attack.” Id. On the contrary, the Government even argued that possession outside the presence of any other person, such as in an empty cell, would still constitute a crime of violence.

. Indeed, it would seem likely that, where an inmate is charged with only possession, he has not threatened or attempted to injure anyone. Presumably, more aggressive and violent actions would result in more serious charges, such as attempted assault.

. This Court has also had difficulty interpreting the provision. See, e.g., United States v. Vann, 660 F.3d 771, 787 (4th Cir.2011) (en banc) (Agee, J., concurring in judgment) ("[N]o matter how diligently and painstakingly my colleagues and I labor over the mystery of the ... residual clause, a black hole of confusion and uncertainty stymies our best efforts.”) (quotation marks omitted).

. Other circuits have considered similar state statutes and disagreed with Polk. See, e.g., United States v. Boyce, 633 F.3d 708 (8th Cir.2011) (holding that possession of a homemade weapon in prison prohibited by a state statute is a violent felony under the A.C.C.A.), cert. denied, - U.S. -, 132 S.Ct. 1002, 181 L.Ed.2d 744 (2012); United States v. Zuniga, 553 F.3d 1330 (10th Cir.2009) (same).